DENNIS BELDOTTI *vs.* COMMONWEALTH.

No. 91-P-1242.

Norfolk. November 30, 1993. - August 22, 1996.

Present: PERRETTA, SMITH, & JACOBS, JJ.

*Forfeiture Proceeding. Words,* "Public interest."

On a posttrial motion by a prisoner serving a life sentence for first degree murder, seeking the return of certain items seized by police pursuant to a search warrant in the investigation of the murder, the public interest, within the meaning of G. L. c. 276, § 3, was best served by the forfeiture of the property pursuant to that statute, where the items were directly related to the circumstances surrounding the particularly gruesome and brutal sex crime of which the defendant was convicted. [188-190]

INDICTMENT found and returned in the Superior Court Department on August 25, 1988.

Following review by the Supreme Judicial Court, 409 Mass. 553 (1991), a posttrial motion for return of seized property was denied without a hearing by *Roger J. Donahue,* J.; after an appeal to this court, the matter was remanded to the Superior Court, and the motion was heard by *John P. Sullivan,* J.

*Dennis J. Beldotti,* pro se.

*Robert Cosgrove,* Assistant District Attorney, for the Commonwealth.

SMITH, J. In January, 1989, Dennis Beldotti was convicted of first degree murder and was sentenced to a term of life imprisonment without possibility of parole. The Supreme Judicial Court affirmed his conviction in 1991, calling it a "brutal sex crime." *Commonwealth* v. *Beldotti,* 409 Mass. 553, 557 (1991).

On July 15, 1991, Beldotti wrote a letter to the Norfolk County district attorney's office requesting the return of the property that had been seized, pursuant to a search warrant,

from his house on August 2, 1988, in connection with the investigation of the murder. A response to the letter indicated that camera equipment, business records, and similar items would be returned to a designated family member but that any trial exhibits and child pornography would not be returned. Numerous assorted articles which had been seized from his home were then returned to both Beldotti's father and sister.

The Commonwealth refused to return to Beldotti the following property: photographs, negatives, and slides which are mostly sexually explicit; eight adult magazines and twenty-four magazines depicting naked pubescent and prepubescent girls and boys; three hardcover collections of adult photographs; female undergarments; one envelope, bearing the return address of the victim; one popcorn bag that tested positive for occult blood; one broken "Glad Heavy Weight Trashbag" box; approximately 100 videotapes that are sexually explicit or involve bondage or violence toward women; four dildos; bondage paraphernalia; one plastic-encased photo of the victim; the contents of the victim's pocketbook; numerous sexually explicit eight millimeter films; and numerous sexually explicit magazines.

On October 7, 1991, Beldotti filed a motion in the Superior Court for the return of the rest of the seized property. This motion was denied without a hearing. Beldotti appealed, and this court remanded the matter to the Superior Court for a full hearing. The judge was directed to make findings which included a list of (1) those seized items that the Commonwealth now has in its possession; (2) those items that have been returned to the possession of Beldotti or a designated family member; (3) those items that the Commonwealth has agreed to return; and (4) those items that are in the Commonwealth's possession that the judge refuses to order to be returned. This court retained jurisdiction over the matter.

After the hearing, a second Superior Court judge filed a memorandum in which he ordered that the Commonwealth return everything except the envelope bearing the victim's return address and the contents of the victim's pocketbook. He then stayed this order pending review by this court. The judge reasoned that Beldotti is serving a life term in prison without the possibility of parole; from this, he found no com-

pelling public interest justifying forfeiture of the items seized. He noted that Beldotti's property would be returned to a designated representative and not to Beldotti himself. Whether Beldotti would be permitted to possess the returned items in prison would be, according to the judge, "determined by the correctional facilities' rules" and was not an issue before him. In addition, the judge held that the Commonwealth's suggestion that G. L. c. 272, §§ 29A and 29B, apply to this case was unfounded because there was no indication that Beldotti had the intention to disseminate any visual material of a child in a state of nudity as made unlawful by G. L. c. 272, § 29B, and there was no indication that any of the photographs were of a child under the age of 18, as made unlawful by G. L. c. 272, § 29A.

In response to this order, the Commonwealth filed a memorandum in this court, claiming that the Superior Court judge abused his discretion and that returning these items would violate the public interest. Beldotti filed a memorandum which stated that he was in agreement with the judge's disposition of the case, but he requested that he be given a complete inventory of all items found in the victim's pocketbook and a chance to copy anything he deemed exculpatory in nature for use in a motion for a new trial.

On November 30, 1993, we heard arguments, by telephone, on this matter. During the course of his argument, Beldotti stated that he was in the process of preparing his motion for a new trial. Because the grounds of that motion could have had a considerable bearing on our decision, as we explain later, we thought it best to wait until Beldotti filed his motion before issuing this opinion. To date, he has not done so. The panel has now decided to release this opinion.

We recite relevant facts which were developed at Beldotti's murder trial as background for our analysis. The victim was found strangled and mutilated in the upstairs bathroom of Beldotti's home. Her nipples had been excised and along the hairline of her pubic area there were multiple incisions, making part of the small bowel visible. There was also a deep incision in her left wrist and small cuts and bruises around her throat. The victim had been violated vaginally and anally with a dildo. Her body was found encased in trash bags — one bag enclosed her legs up to her waist and another bag was over her head down to her waist.

The Needham police, working in conjunction with the State police, obtained a warrant to search the premises and, pursuant to that warrant, seized numerous items, including the items Beldotti seeks to have returned in this case. In Beldotti's bedroom, the police found and seized pictures of the victim in various stages of undress that had disappeared from the home of the victim and her husband. Also seized were several photographs (which the jury could have found were taken by Beldotti after the victim's death) depicting the victim's naked breast and genital area. In one such photo, a dildo had been inserted into her vagina; in another photo, a dildo had been inserted into her anus. These photographs were introduced in evidence at trial and are not the subject of Beldotti's motion for the return of seized property.

General Laws c. 276, § 3, as amended by St. 1964, c. 557, § 4, states, in pertinent part:

> "If an officer in the execution of a search warrant finds property or articles therein described, he shall seize and safely keep them, under the direction of the court or justice, so long as necessary to permit them to be produced or used as evidence in any trial. As soon as may be, thereafter, all property seized under clause First of section one shall be restored to the owners thereof; and all other property seized in execution of a search warrant shall be disposed of as the court or justice orders and may be forfeited and either sold or destroyed, *as the public interest requires,* in the discretion of the court or justice . . . " (emphasis added).

The first clause of G. L. c. 276, § 1, states that "property or articles stolen, embezzled or obtained by false pretenses, or otherwise obtained in the commission of a crime," may be searched for and seized by the police. While § 3 requires that this property be returned to its rightful owners as soon as possible, property that was not stolen, embezzled, or obtained by false pretenses may be forfeited and either sold or destroyed, as the public interest requires.

The Commonwealth contends that, given the nature and circumstances of the crime Beldotti committed, the public interest is best served by the forfeiture of Beldotti's property. The Commonwealth argues that restoring to Beldotti's pos-

session such things as four dildos, twenty-four items of alleged child pornography, and numerous sexually explicit publications (bearing such titles as "Tamed & Tortured," "Tit & Body Torture," and "Tortured Ladies") would justifiably spark outrage, disgust, and incredulity on the part of the general public and thereby undermine its confidence in the criminal justice system. We agree.

Massachusetts case law has never defined "public interest" as it is used in G. L. c. 276, § 3. However, all crimes, regardless whether a person is directly harmed, are considered to be offenses against the public interest and common welfare, and thus Federal and State laws have been enacted to deter criminal activity. Cf. *Chicago, R.I. & P. Ry.* v. *Territory*, 25 Okla. 238 (1909). "[A] forfeiture proceeding has the dual purpose of preventing further illicit activity and of *imposing a penalty.* Forfeiture is punitive because it results in total loss of the property." *Commonwealth* v. *One 1972 Chevrolet Van*, 385 Mass. 198, 201 (1982) (emphasis added; citations omitted) (regarding forfeiture of a motor vehicle used in the unlawful distribution of a controlled substance). In some cases, it is therefore within the public interest to punish the offender for the criminal act by refusing to return the property to the offender. This is such a case.

Although property may not be forfeited simply because it is offensive or repugnant, we see a connection between the property that Beldotti seeks to have returned to him and the crime he committed. The murder for which Beldotti is serving his life-term was particularly gruesome; he photographed the victim's naked torso after inserting dildos into her vagina and anus and after sexually mutilating her body. The items that Beldotti seeks to have returned to him can be seen as being directly related to those acts, as having influenced his behavior, or as being relevant to an understanding of the psychological or physical circumstances under which the crime was committed.

Beldotti has stated on two occasions, once in a memorandum and again during his oral argument, that he plans to file a motion for a new trial. We do not have any idea of the grounds for such a motion. In our experience, however, grounds for a new trial can be broad and far-reaching. Even though the property Beldotti seeks to have returned was not introduced or referred to at his first trial, the Commonwealth may elect to do so if there are further proceedings.

In these circumstances, to return the property would be so offensive to basic concepts of decency treasured in a civilized society, that it would undermine the confidence that the public has a right to expect in the criminal justice system.

The order dated June 8, 1992, is vacated and a new order shall enter denying Beldotti's motion for the return of his property.

*So ordered.*