COMMONWEALTH & another[1] *vs.* ANTHONY J. RUFO.

Suffolk. January 8, 1999. - April 14, 1999.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, FRIED, MARSHALL, & IRELAND, JJ.

*Forfeiture Proceeding. Jurisdiction,* In rem, Forfeiture, Property seized at time of arrest.

Where police officers lawfully submitted a forfeiture report and delivered an amount of currency seized during an arrest to the Federal Drug Enforcement Administration, which issued a declaration of forfeiture before the defendant moved in the Boston Municipal Court for the return of his property, which had been unlawfully seized, the Boston Municipal Court was without jurisdiction over the money and could not order its return to the defendant. [382-385] FRIED, J., concurring, with whom LYNCH, J., joined.

COMPLAINT received and sworn to in the Charlestown Division of the District Court Department on June 30, 1992.

After transfer to the Boston Municipal Court Department, a motion to vacate an order for return of property was heard by *Herbert H. Hershfang,* J.

The Supreme Judicial Court granted an application for direct appellate review.

*Gregory I. Massing,* Assistant Attorney General, for the Commonwealth & another.

*Jeffrey A. Gorlick* for the defendant.

The following submitted briefs for amici curiae:

*Donald K. Stern,* United States Attorney, *& Richard L. Hoffman,* Assistant United States Attorney, for the United States.

*Eva S. Nilsen, Scott A. Weseley, & Andrew H. Good* for Boston University Defender Program & another.

---

[1] On June 23, 1997, long after the decision of the Boston Municipal Court from which this appeal has been taken, the Massachusetts Department of State Police moved to intervene in this case. Timely intervention by a governmental unit against which an order to return property might be entered is appropriate. See *Commonwealth* v. *Sacco,* 401 Mass. 204, 209 n.5 (1987). The parties have treated the department as an intervener, although there is no record indication that intervention was allowed.

WILKINS, C.J. On June 29, 1992, the Metropolitan District Commission police (now part of the Department of State Police)[2] arrested the defendant for operating a motor vehicle while under the influence of intoxicating liquor and operating negligently so as to endanger. During an inventory search of the defendant's vehicle, an officer seized a closed briefcase from the front passenger seat. On opening the briefcase, the officer found $38,692 in United States currency and two lawfully registered handguns. A further search of the briefcase at the police station revealed a folded packet containing 1.51 grams of cocaine. The defendant was then charged additionally with operating while under the influence of drugs and possession of a class B controlled substance.

On March 9, 1993, a judge in the Boston Municipal Court ruled that the further search of the briefcase that disclosed the cocaine was an investigatory search, not an inventory search, and was unlawful. He allowed the defendant's motion to suppress its contents. The Commonwealth then moved to dismiss all charges against the defendant except the charge of operating while under the influence of intoxicating liquor. On October 25, 1993, a jury found him not guilty of that offense. On November 19, 1993, the defendant moved for the return of his property, including the money. On November 26, 1993, a judge in the Boston Municipal Court allowed that motion.

All this would be an unexceptionable process but for the fact that, unbeknownst to the judge who ordered the property to be returned, approximately five weeks after the defendant's arrest, the State police had submitted a forfeiture report and delivered the currency to the Drug Enforcement Administration (DEA) of the Federal government. DEA promptly initiated administrative forfeiture proceedings.[3] See 19 U.S.C. §§ 1602 et seq. (1994 & Supp. III 1997); 21 U.S.C. § 881 (1994 & Supp. III 1997). On September 25, 1992, the DEA issued a declaration of forfeiture. See 19 U.S.C. § 1609 (1994). The defendant, claiming insufficient notice of the DEA forfeiture proceeding, challenged the forfeiture by submitting a petition for remission or mitigation to the DEA. See 19 U.S.C. § 1618 (1994); 28 C.F.R. §§ 0.100 (b), 0.101 (c), 9.5 (1998).

---

[2]See St. 1991, c. 412, § 1.

[3]When the defendant moved for the return of his property, he knew of the Federal forfeiture proceeding, but did not advise the Boston Municipal Court judge of it.

On May 17, 1994, the defendant moved in the Boston Municipal Court for enforcement of the order for the return of his property. On June 30, 1994, after the Boston Municipal Court judge had learned of the DEA proceedings, he decided to take no action on the defendant's motion "at least until the Federal Forfeiture decision becomes final." On October 3, 1994, the DEA denied the defendant's request for reconsideration of its declaration of forfeiture. The Boston Municipal Court judge thereafter considered whether, in light of the Federal forfeiture, he should vacate his order that the property be returned to the defendant. He decided not to do so and directed the State police to pay the defendant $38,692. The Commonwealth appealed, and a single justice of the Appeals Court stayed the order of payment on condition that the amount in question be deposited in an account pending the appeal. We granted the application of the Commonwealth and State police for direct appellate review. The appeal was timely because the Boston Municipal Court judge reopened the entire issue. Cf. *Commonwealth* v. *Hallet*, 427 Mass. 552, 554 (1998).

If the issue in this case is whether the Federal forfeiture or the Boston Municipal Court order to return the money takes precedence, the applicable rule of law is clear. When a State and a Federal court each proceeds against the same res, "the court first assuming jurisdiction over the property may maintain and exercise that jurisdiction to the exclusion of the other." *Penn Gen. Cas. Co.* v. *Pennsylvania ex rel. Schnader*, 294 U.S. 189, 195 (1935). See *Commonwealth* v. *One 1987 Ford Econoline Van*, 413 Mass. 407, 413 (1992).

If the funds in dispute had been seized pursuant to a search warrant, a strong argument could be made that the State courts first exercised jurisdiction over the property. Property seized pursuant to a search warrant in Massachusetts is held "under the direction of the court" and all property (other than stolen property) "seized in execution of a search warrant shall be disposed of as the court or justice orders." G. L. c. 276, § 3. Better reasoned opinions recognize that a State statute of that character provides a proper basis for jurisdiction over property seized pursuant to a search warrant. See *Scarabin* v. *Drug Enforcement Admin.*, 966 F.2d 989, 993 (5th Cir. 1992) ("From the moment of seizure the state district court had exclusive control over the *res* by virtue of issuing the search warrant that procured the seized funds . . ."); *United States* v. *One 1979*

*Chevrolet C-20 Van*, 924 F.2d 120, 122 (7th Cir. 1991) ("A local police department may not take seized property and just pass it on as it pleases to the FBI in flagrant disregard of state laws mandating judicial authority for such turnovers"); *United States* v. *$490,920 in U.S. Currency*, 911 F. Supp. 720, 725-728 (S.D.N.Y. 1996); *Johnson* v. *Johnson*, 849 P.2d 1361, 1364 (Alaska 1993).[4] On the other hand, in the absence of a State statute providing for judicial control over seized property, courts have held that the seizure of property by State authorities does not alone confer in rem jurisdiction on a State court. See *Madewell* v. *Downs*, 68 F.3d 1030, 1042 (8th Cir. 1995); *United States* v. *566 Hendrickson Blvd.*, 986 F.2d 990, 994-995 (6th Cir. 1993); *United States* v. *One 1985 Cadillac Seville*, 866 F.2d 1142, 1146 (9th Cir. 1989); *United States* v. *$639,470.00 U.S. Currency*, 919 F. Supp. 1405, 1410-1412 (C.D. Cal. 1996).

In the case before us, the property in dispute was not seized pursuant to a warrant. No Massachusetts statute prescribes judicial control over property that was not seized pursuant to a warrant.[5] The Commonwealth argues that the Boston Municipal Court did not have in rem jurisdiction over the money until the defendant moved for its return, an event which occurred many months after the Federal forfeiture proceedings commenced.[6] In the absence of a State statute like G. L. c. 276, § 3, applicable to warrantless seizures of property, the Federal government

---

[4]The unexplained assertion in *United States* v. *One 1986 Chevrolet Van*, 927 F.2d 39, 44-45 (1st Cir. 1991), that State control begins only with the commencement of a State forfeiture proceeding, rather than with the issuance of a search warrant, fails to recognize the State court's statutory control over property seized pursuant to a warrant and has been criticized and rejected. See *Scarabin* v. *Drug Enforcement Admin.*, 966 F.2d 989, 994 (5th Cir. 1992); *United States* v. *$490,920 in U.S. Currency*, 911 F. Supp. 720, 727 (S.D.N.Y. 1996).

We also disagree with the analysis in *United States* v. *Winston-Salem/ Forsyth County Bd. of Educ.*, 902 F.2d 267, 272 (4th Cir. 1990), because it ignores the principle of in rem jurisdiction expressed in *Penn Gen. Cas. Co.* v. *Pennsylvania ex rel. Schnader*, 294 U.S. 189, 195 (1935).

[5]Cf. Alaska Stat. § 17.30.114 (b) (1998) (under search warrant or incident to arrest); Ind. Code Ann. § 35-33-5-5 (Michie 1998) (pursuant to arrest, search warrant, or warrantless search); Minn. Stat. Ann. § 626.04 (West 1983 & Supp. 1999) (with or without warrant).

[6]It is doubtful that either the filing or the allowance of a motion to suppress seized evidence confers in rem jurisdiction on a State court. See *Commonwealth* v. *Santoro*, 406 Mass. 421, 422 (1990). In any event, the suppression motion was filed and allowed long after the Federal forfeiture proceedings began.

established in rem jurisdiction first, and thus the Boston Municipal Court lacked jurisdiction over the money seized from the defendant.[7] See *Penn Gen. Cas. Co.* v. *Pennsylvania ex rel. Schnader,* 294 U.S. 189, 195 (1935); *Commonwealth* v. *One 1987 Ford Econoline Van,* 413 Mass. 407, 413 (1992). Obviously, there must be a process for returning to its owner property unlawfully seized without a warrant (see *Commonwealth* v. *Sacco,* 401 Mass. 204, 207 n.3 [1987]), but there is no basis for extending the reach of G. L. c. 276, § 3, beyond its terms to justify an assertion of in rem jurisdiction over property not seized pursuant to a warrant.

The defendant contends that, even if the Federal forfeiture procedure controls the disposition of the money, the Boston Municipal Court in this case, as a matter of equity and relying on *Commonwealth* v. *Sacco,* 401 Mass. 204 (1987), could order the State police to pay him an equivalent amount. He points out that the money was seized in violation of his constitutional rights and promptly turned over to the DEA with the prospect that, if declared forfeit, eighty-five per cent of it would be returned to the State police to pay salaries and to purchase vehicles and equipment. On the other hand, assuming that weighing equities is appropriate, we would give no weight to claimed improprieties in the Federal forfeiture proceeding, a dispute between the defendant and the Federal authorities that the defendant lost.[8] In this case the police did not violate any law in submitting the money to be forfeited by the Federal government.[9] The deterrent purpose of the suppression of evidence was served, to the defendant's benefit, when various charges against him were dismissed.

In *Commonwealth* v. *Sacco, supra,* the Somerville police made an unlawful, warrantless seizure of the defendant's funds. They then lost the money. The defendant moved for the return of his property. A judge ordered that the equivalent amount be

---

[7] It is, of course, not for a State court to analyze the quality and fairness of a Federal forfeiture proceeding, to find it wanting, and then to treat it as a nullity.

[8] The judge in the Boston Municipal Court appears to have been moved to rule in the defendant's favor because of his sense that the Federal forfeiture proceeding was unfair (inadequate notice; the tenuous connection between the money and any drug activity; and the limited nature of the hearing given the defendant).

[9] Such actions in other situations could, however, permit a valid argument that the government lost exculpatory evidence.

paid to the defendant. We held, on the Commonwealth's appeal, that where evidence was unlawfully seized and no third person had a claim against it (e.g., there had been no forfeiture proceeding), an order against Somerville to pay the amount of money that was lost provided a fair, prompt, and efficient means of resolving the defendant's claim as part of the criminal proceeding. *Id.* at 208.

The *Sacco* opinion provides no answer to the question whether, in this case, an order against the State police to pay money to the defendant would be appropriate. In the case before us, the Boston Municipal Court never had in rem jurisdiction over the funds, whereas the court in the *Sacco* case had in rem jurisdiction over the property when Sacco moved for its return. In the *Sacco* case the police wrongfully lost the defendant's money, which would have been returned to him in the normal course but for the police misstep. Here, in tendering the property to the DEA for forfeiture, the police violated no law nor did they deprive the defendant of his right to the funds. The question of the defendant's right to the funds was transferred to the Federal forum, where, rightly or wrongly, the defendant lost. An order against the State police to pay the equivalent of the forfeited funds to the defendant would not be appropriate in this case.

We do, however, share with the motion judge a concern about the process, however lawful, by which the State police benefited from its conduct. The police seized the money in violation of the defendant's constitutional rights. They then put the money into a Federal forfeiture process that returns to the State police a larger proportion of any forfeited funds (85%) than would the State forfeiture procedure (50%) (see G. L. c. 94C, § 47 [*d*]). Perhaps the Legislature will conclude that fairness calls for legislation asserting State court control over all property seized by State and local law enforcement officials and, where Federal supremacy principles permit, for the use by the police of State, and not Federal, forfeiture procedures.

The portion of the December 3, 1996, order directing the payment of $38,692 to the defendant and all prior orders directing the payment of money to the defendant are vacated.

*So ordered.*

FRIED, J. (concurring, with whom Lynch, J., joins). I join the

judgment of the court and all of its opinion except the next-to-last paragraph. The court suggests to the Legislature that it revise the law so as to avoid what the court finds is the unfairness of the result that it concludes the present state of the law forces it to reach. The result here is not the least bit unfair, and it reveals nothing that should be changed. The brief explanation the court offers for its sentiment that something untoward — although perfectly lawful — has happened depends on premises and reasoning that I cannot join.

To begin with, it should be noted that the premise that there was a violation of the defendant's constitutional rights is valid only arguendo. The judge below found that the search that uncovered the packet of cocaine was not a proper inventory search. This is an arguable proposition, but one that is not before us because the Commonwealth chose not to appeal from the decision suppressing the evidence of the cocaine. Second, although no one even suggests this, we should reject any thought that there has been unfairness of a different kind: that a minor peccadillo may cause the defendant to lose $38,000 in cash in the Federal forfeiture procedure. The laws of this country do not consider the possession of cocaine (even a "small" quantity for "personal use") a peccadillo, and the forfeiture that they may authorize here strikes me as not obviously disproportionate to the offense. And, if the forfeiture is disproportionate, there is a constitutional avenue open for making that very argument. See *Austin* v. *United States*, 509 U.S. 602 (1993). Once the air is cleared of this suggestion, what we are left with is the possibility of a substantial forfeiture of the instrumentality of a very serious crime — in itself a good thing, not a bad thing. Where, then, is the unfairness? It is, we are told, that "the State police benefited" from the "violation of the defendant's constitutional rights." *Ante* at 385. But it is not the police who have benefited. The police officers would not divide up the cash and take a vacation with it. If forfeited, the money would go to the police budget, where presumably it would be used to assist law enforcement. It is the public which benefits from this forfeiture, and that illicitly possessed funds (for that would be the premise if there is forfeiture) should benefit the public by providing it with more law enforcement is a good thing, not a bad thing.

So, finally, we are left with the unexpressed conclusion that the public should not derive a benefit to which, by hypothesis, it

is otherwise entitled because somewhere down the line there has been (arguably) a violation of the defendant's rights under the Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights. This is the logic of the exclusionary rule (which the Supreme Court imposed on us in *Mapp* v. *Ohio*, 367 U.S. 643 [1961]), but carried to its limit. Subsequent decisions of the Supreme Court, see, e.g., *United States* v. *Leon*, 468 U.S. 897 (1984); *Illinois* v. *Gates*, 462 U.S. 213 (1983); *Stone* v. *Powell*, 428 U.S. 465 (1976), have disciplined the tendency of the exclusionary rule to blossom out of all proportion and out of all sensible balance. In my view, the defendant has had all the benefit he is due from the violation of his constitutional rights, if there was one: the evidence of the cocaine has been suppressed and this has caused the charges against him to be dropped. He also has available to him a civil action for damages in our courts or under 28 U.S.C. § 1983 (1994), for whatever violation of his constitutional rights has taken place. It carries the argument to the limit of its logic and beyond to suggest that fairness requires his forfeiture of the instrumentality of his crime should also be vacated.