Cheshire
No. 2004-331

THE STATE OF NEW HAMPSHIRE

v.

ALFRED J. GERO

Argued: May 5, 2005
Opinion Issued: June 23, 2005

*Kelly A. Ayotte*, attorney general (*Stephen G. LaBonte*, attorney, on the brief and orally), for the State.

*Sheldon, Davis & Wells, P.C.*, of Keene (*James Romeyn Davis* on the brief and orally), for the defendant.

BRODERICK, C.J. The defendant, Alfred J. Gero, pled guilty to one charge of criminal threatening, *see* RSA 631:4 (Supp. 2004). On appeal, he argues that the Superior Court (*Sullivan*, J.) erred in granting the State's post-plea motion to destroy seized property. We vacate in part and remand.

The following facts are not in dispute. The defendant, who was a police officer at the time, was arrested for allegedly threatening his former girlfriend. In connection with his arrest, State Police seized from the defendant over twenty firearms, plus ammunition.

The State originally indicted the defendant on one count of felony criminal threatening, alleging that he:

> did threaten to commit a crime against the person of another by means of a deadly weapon, with a purpose to terrorize [the victim] and/or her family members, to wit: [He] took a pistol out of his gun cabinet and said he would "blow them away . . . ."

The threat was alleged to have occurred at the defendant's residence in Winchester. Subsequently, the State amended the charge to a class A misdemeanor. The amended indictment alleged that the defendant:

> did threaten to commit a crime against the person of another with a purpose to terrorize [the victim] and/or her family members, to wit: [He] said he would "blow them away . . . ."

The defendant pled guilty to the amended charge. Thereafter, the State moved to destroy the seized property. Following a hearing on the State's motion, the trial court issued a written order releasing four guns to the

defendant's brother and two guns to the defendant's son, and ordering the remaining items destroyed.

The trial court found that although two of the four guns released to the defendant's brother were in the defendant's possession at the time of his arrest, they belonged to his brother. The other two guns released to the defendant's brother had belonged to the defendant's father and grandfather. The court's ruling as to those firearms was "based in part on the defendant's representation that he [would] possess no guns in the future and his brother's representations that if he [were] awarded the guns, he [would] keep [them] and not allow the defendant any access to [them]." The trial court found that two guns, although in the defendant's possession at the time of his arrest, belonged to the defendant's son. As for the remaining property, the trial court, with no discussion, ruled that "the public interest requires destruction of the remaining articles seized." This appeal followed.

The defendant does not challenge the release of four firearms to his brother and two to his son. Instead, he argues that destruction of the remaining items was neither in the public interest nor consistent with due process because: (1) the items were not contraband and were not used in the commission of the crime; and (2) he did not seek return of the items, but rather their release to his brother. The State asserts that the trial court's order should be upheld because: (1) the defendant can no longer legally possess any firearms, thus rendering any infringement upon his property rights minimal; (2) the hearing on the State's motion afforded the defendant sufficient due process; and (3) the weapons were related to the defendant's threat, and therefore the public has a strong interest in having them destroyed.

We review a trial court's ruling on the disposition of property under RSA 595-A:6 for an unsustainable exercise of discretion. *State v. Hebert*, 122 N.H. 1089, 1090 (1982); *cf. State v. Lambert* 147 N.H. 295, 296 (2001) (explaining unsustainable exercise of discretion standard). "To show that the trial court's decision is not sustainable, the defendant must demonstrate that the court's ruling was clearly untenable or unreasonable to the prejudice of his case." *Lambert*, 147 N.H. at 296 (quotation omitted).

RSA 595-A:6 (2001) provides, in relevant part:

If an officer in the execution of a search warrant, or by some other authorized method, finds property or articles he is empowered to take, he shall seize and safely keep them under the direction of the court or justice so long as necessary to permit them to be produced or used as evidence in any trial. Upon application by a prosecutor, defendant, or civil claimants, the

court, prior to trial or upon an appeal after trial, shall, upon notice to a defendant and hearing, and except for good cause shown, order returned to the rightful owners any stolen, embezzled or fraudulently obtained property, or any other property of evidential value, not constituting contraband. . . . All other property seized in execution of a search warrant or otherwise coming into the hands of the police shall be returned to the owner of the property, or shall be disposed of as the court or justice orders, which may include forfeiture and either sale or destruction as the public interest requires, in the discretion of the court or justice, and in accordance with due process of law.

In this case, the trial court ruled that the public interest required destruction of the remaining property, and the parties' arguments on appeal focus upon the application of the public interest requirement to the facts of this case. Because the parties do not contest the trial court's treatment of this case under the "[a]ll other property" clause of the statute, we conduct our analysis accordingly.

 The State titled its motion, "State's Motion to Destroy Seized Property Pursuant to RSA 595-A:6," and requested the trial court to "[o]rder that the firearms and ammunition seized, be destroyed by the New Hampshire State Police." RSA 595-A:6 provides, however, that certain items seized by the police shall be disposed of "as the court or justice orders, which may include forfeiture *and either* sale or destruction as the public interest requires." (Emphasis added.) A plain reading of this provision reveals that a court may order that property be sold or destroyed pursuant to RSA 595-A:6 only if it first orders that the property be forfeited. Forfeiture, which is not defined in RSA 595-A:6, is commonly defined as follows:

1 a : the divesting of the ownership of a particular property of a person on account of the breach of a legal duty and without any compensation to him : the loss of property or money on account of one's breach of the terms of an agreement, bond, or other legal obligation b : loss of some right, privilege, estate, honor, office, or effects in consequence of a crime, offense, breach of condition, or other act.

WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 891 (unabridged ed. 2002); *see* RSA 21:1, :2 (2000) (in interpreting statute, words shall be construed according to common and approved usage). Thus, before a court orders that property be sold or destroyed pursuant to RSA 595-A:6, it

must first divest an individual of his or her ownership in the property by ordering forfeiture.

The defendant asserts that the trial court erred in ordering the property destroyed rather than releasing it to his brother. At the hearing on the State's motion, the defendant, through counsel, stated:

> And given the family reference to [the firearms], we are asking that they, in fact—and the defendant has given his brother a bill of sale in regard to all of these firearms, and we're asking that they be transferred to his brother to be kept within the family, and certainly to secure the monetary value.

The defendant appears to be arguing that because he sold the items to his brother the court should, therefore, have ordered them to be released to his brother and not forfeited and destroyed. In so arguing, the defendant misconstrues RSA 595-A:6.

The statute provides that once property is seized by the police pursuant to a search warrant or "some other authorized method," the police are to "safely keep [the property] under the direction of the court or justice so long as necessary to permit them to be produced or used as evidence in any trial." RSA 595-A:6. Then, property with evidential value is to be returned to its rightful owners, except for good cause shown, and "[a]ll other property . . . shall be returned to the owner of the property, or shall be disposed of as the court or justice orders, which may include forfeiture and either sale or destruction as the public interest requires." *Id.*

■■ Thus, the statute authorizes police to maintain custody of seized property, pending disposition by a court or justice. The seizure and continued possession of property by the police do not divest individuals of their ownership of the property such that forfeiture has occurred; otherwise, the statute's express authorization that courts may dispose of seized property by "forfeiture and either sale or destruction" would be redundant. *See Marcotte v. Timberlane/Hampstead School Dist.*, 143 N.H. 331, 339 (1999) (legislature not presumed to waste words or enact redundant provisions). Rather, the seizure and continued possession of property by the police render the property unavailable to the owner of the property in the sense that he or she may not dispose of the property by selling it or otherwise; the plain language of the statute delegates the disposition of seized property to a court or justice. Accordingly, the defendant did not have the power to sell the seized property to his brother and the court, therefore, was under no obligation to order the property transferred to the defendant's brother based upon the bill of sale.

To determine whether the trial court unsustainably exercised its discretion in ordering the property destroyed, we first consider whether it was correct in ruling that the property be forfeited. *See Nordic Inn Condo. Owners' Assoc. v. Ventullo*, 151 N.H. 571, 586 (2004) (we assume trial courts make subsidiary findings necessary to support general findings). The issue of when property should be forfeited under RSA 595-A:6 is one of first impression.

The defendant advances several arguments in support of his contention that the trial court unsustainably exercised its discretion in ordering the remaining firearms and ammunition forfeited and destroyed. For example, he contends that: (1) "existing forfeiture case law does not support the taking of property which is not contraband and was not used in the commission of a crime;" (2) "the [trial court's] Order deprives [him] of his constitutionally protected, private property rights;" and (3) "the 'public policy' of this State, and in fact this nation, evidences a bedrock principal [*sic*] of protecting private property rights absent significant, countervailing public need." Further, he argues that RSA 595-A:6 protects his "substantive due process rights," which he characterizes as State and federal constitutional "private property rights." Additionally, he challenges the trial court's order on the basis that he was not seeking possession of the property, but wanted the items released to his brother.

We construe these arguments as addressing whether the trial court erred in ordering that the property be forfeited, and not whether, once forfeited, the property should be ordered destroyed. In other words, the essence of the defendant's contentions is that the trial court erred in severing his property rights in the remaining items such that he could not transfer title or possession to his brother. Thus, we need not determine the separate issue, assuming one exists, of whether, once the trial court ordered forfeiture, it correctly ordered that the property be destroyed.

In *Beldotti v. Commonwealth*, the Massachusetts Appeals Court squarely addressed the issue of when the public interest requires forfeiture of property seized by the police, and in doing so, interpreted the term "public interest" for purposes of Mass. Gen. Laws ch. 276, § 3 (2005). *Beldotti v. Commonwealth*, 669 N.E.2d 222 (Mass. App. Ct.), *review denied*, 672 N.E.2d 538 (Mass. 1996), *cert. denied*, 520 U.S. 1173 (1997). The relevant portion of chapter 276 § 3 provides:

> If an officer in the execution of a search warrant finds property or articles therein described, he shall seize and safely keep them, under the direction of the court or justice, so long as necessary to permit them to be produced or used as evidence in any trial. As soon as may be, thereafter, all property seized under clause First

of section one shall be restored to the owners thereof; and all other property seized in execution of a search warrant shall be disposed of as the court or justice orders and may be forfeited and either sold or destroyed, as the public interest requires, in the discretion of the court or justice . . . .

In *Beldotti*, the defendant had been convicted of first-degree murder, a crime which the Massachusetts Supreme Judicial Court referred to as a "brutal sex crime" in affirming his conviction, and sentenced to life without the possibility of parole. *Beldotti*, 669 N.E.2d at 223. Several years after his conviction, the defendant contacted the district attorney's office that had prosecuted his case, seeking the return of property seized from his home in connection with the murder investigation. The district attorney's office returned camera equipment, business records and other similar items to the defendant's father and sister, but retained trial exhibits and child pornography. *Id.*

The defendant then filed a motion in the superior court, seeking return of the remainder of his property. The superior court ultimately ordered that all property except the contents of the victim's pocketbook and an envelope bearing the victim's address be returned to the defendant. *Id.* The court explained that in light of the defendant's life term of imprisonment without the possibility of parole, there was no compelling public interest justifying forfeiture. The court further reasoned that whether the defendant was allowed to possess the items in prison was for correctional officials to decide. *Id.* at 223-24.

The Commonwealth appealed, and the appeals court vacated the superior court's order and directed it to issue an order denying the defendant's motion. *Id.* at 224, 225. The appeals court explained the basis for its decision, in relevant part, as follows:

Massachusetts case law has never defined "public interest" as it is used in G.L. c. 276, § 3. However, all crimes, regardless whether a person is directly harmed, are considered to be offenses against the public interest and common welfare, and thus Federal and State laws have been enacted to deter criminal activity. A forfeiture proceeding has the dual purpose of preventing further illicit activity and of *imposing a penalty.* Forfeiture is punitive because it results in total loss of the property. In some cases, it is therefore within the public interest to punish the offender for the criminal act by refusing to return the property to the offender. This is such a case.

Although property may not be forfeited simply because it is offensive or repugnant, we see a connection between the property

that [the defendant] seeks to have returned to him and the crime he committed. The murder for which [the defendant] is serving his life-term was particularly gruesome .... The items that [the defendant] seeks to have returned to him can be seen as being directly related to those acts, as having influenced his behavior, or as being relevant to an understanding of the psychological or physical circumstances under which the crime was committed.

....

In these circumstances, to return the property would be so offensive to basic concepts of decency treasured in a civilized society, that it would undermine the confidence that the public has a right to expect in the criminal justice system.

*Id.* at 225 (quotation, citations and brackets omitted; emphasis in original).

██ We agree with the court's conclusion in *Beldotti* that property, which is not contraband, may not be forfeited simply because it is offensive or repugnant. Indeed, we are persuaded by the notion that forfeiture of property in the public interest, other than contraband, should occur when: (1) the property involved directly relates to the acts underlying the committed crime in that it either influenced a defendant's behavior in relation to the crime, or is relevant to an understanding of the psychological or physical circumstances under which the crime was committed; or (2) returning the property to the defendant "would be so offensive to basic concepts of decency treasured in a civilized society," or "would justifiably spark outrage, disgust, and incredulity on the part of the general public" that it would "undermine public confidence in the criminal justice system." *Id.* Both determinations require consideration of the totality of the circumstances, including, among other things, the nature of the crime, the circumstances surrounding the crime and the particular relationship the property has to the crime.

The public has an interest in punishing those who commit crimes and in deterring future criminal conduct. Additional punishment in the form of forfeiture of property that is not contraband should occur when the property satisfies one or both of the considerations outlined above; otherwise, property could be ordered forfeited even when it has no appreciable relationship to a defendant's crime. In the absence of such a relationship, the forfeiture of property would not comport with appropriate punishment or have a meaningful deterrent effect. Moreover, requiring courts to consider the totality of the circumstances in determining whether to return property to a defendant bears directly on the issue of maintaining public confidence in our criminal justice system. Finally, RSA 595-A:6 contains an express requirement that the disposition

of property under the statute comport with due process of law. This requirement is satisfied when property falls within the scope of our newly announced test.

Here, after releasing several pieces of property to the defendant's brother and son, the trial court ordered that the remaining items be destroyed. In doing so, the court made a threshold determination that the public interest required forfeiture of the property. *See Nordic Inn*, 151 N.H. at 586. However, in making that determination, the court did not have the benefit of the test we announce today for determining when forfeiture is in the public interest, and did not engage in any discussion regarding its conclusion that the public interest required forfeiture and destruction of the property. Therefore, we are unable to determine what reasoning the court used to reach its conclusion. Accordingly, we vacate the portion of the trial court's order that relates to the items ordered to be forfeited and destroyed, and remand for further proceedings consistent with this opinion.

*Vacated in part and remanded.*

NADEAU, DALIANIS, DUGGAN and GALWAY, JJ., concurred.