NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

24-P-1152                                        Appeals Court

COMMONWEALTH  vs.  ROBERT IVARSON.

No. 24-P-1152.

Middlesex.      September 12, 2025. – January 16, 2026.

Present:  Vuono, Massing, & Allen, JJ.

Forfeiture Proceeding.  Waiver.  Firearms.  Search and Seizure, Warrant.  Practice, Criminal, Waiver, Judicial discretion. Words, "Public interest."

Indictments found and returned in the Superior Court Department on May 9, 2017, October 26, 2017, and May 29, 2018.

Motions to dispose of seized property and for return of property were heard by Laurence D. Pierce, J.

Robert H. D'Auria for the defendant.
Jamie Michael Charles, Assistant District Attorney, for the Commonwealth.

MASSING, J.  The defendant, Robert Ivarson, appeals from an order allowing the Commonwealth's motion to forfeit certain property seized from the defendant's home during the execution of a search warrant and denying the defendant's motion to return the same property.  General Laws c. 276, § 3, states that,

except for specified categories of stolen property, "property seized in execution of a search warrant shall be disposed of as the court or justice orders and may be forfeited and either sold or destroyed, as the public interest requires, in the discretion of the court or justice."  Under Commonwealth v. James, 493 Mass. 828, 838 (2024), which was decided after the order of forfeiture at issue here was entered, hearings concerning the forfeiture of property conducted under § 3 must comport with the procedures set forth in G. L. c. 276, §§ 4 to 8.  For the first time on appeal, the defendant claims that his forfeiture proceedings were procedurally flawed because §§ 4 to 8 were not followed.  He also asserts that the motion judge erred in applying § 3 to seized property that was not described in the search warrant, and in determining that forfeiture was in the public interest.  Concluding that the defendant waived his procedural argument, that the waiver is not excused by the so-called "clairvoyance" exception, and that the judge did not otherwise err or abuse his discretion in issuing the forfeiture order, we affirm.

Background.  In mid-December 2016 a family reported to the police that they, the only Black family residing in their neighborhood, had been the victims of an ongoing campaign of anonymous harassment over the past year.  Between thirty and forty times, they had found banana peels thrown into their

driveway. The week before they called the police the episodes had escalated; they had found banana peels on their car in the driveway every day that week. An investigation, which included video surveillance of the neighborhood, revealed that the perpetrator was the defendant, who lived on the same street as the victims.

In early January 2017, the police obtained a warrant authorizing them to search the defendant's residence for evidence of criminal harassment, particularly "bananas of any kind." The officers knew that the defendant had a lengthy criminal history, including felony convictions for assault and battery by means of a dangerous weapon and assault with a firearm, as well as numerous other convictions for firearms violations. While executing the warrant, the officers had conversations with the defendant's parents and a friend of the defendant that led them to believe that the defendant illegally possessed numerous firearms and was storing them in his bedroom. Later that day the police obtained a second warrant, which authorized a search for evidence of unlawful possession of firearms, specifically, "firearms, ammunition, and any documents evidencing the purchase, sale, custody or control of those items." In executing the second warrant, the police seized an arsenal of firearms and ammunition. They also seized some items that were not described in the warrant, but were related to the

crimes they were investigating, including firearms accessories such as holsters, scopes, ammunition loading devices, and cleaning kits, as well as Confederate and Nazi paraphernalia.

A grand jury indicted the defendant on over one hundred firearms-related charges, including thirty charges of unlawful possession of assault weapons and large-capacity firearms and feeding devices. For most of these crimes he was charged as an "armed career criminal" with two qualifying prior convictions. See G. L. c. 269, § 10G (b). With respect to the crimes against his neighbors, the defendant was indicted on charges of criminal harassment, see G. L. c. 265, § 43A (a), and criminally violating their civil rights, see G. L. c. 265, § 37. In February 2023 he pleaded guilty to 111 crimes and to being a prior violent offender with one predicate offense. See G. L. c. 269, § 10G (a). He was sentenced to ninety-nine concurrent State prison terms of from seven to nine years, followed by twelve concurrent three-year terms of probation.

Following sentencing the Commonwealth filed its motion "to Dispose of Seized Property" on April 21, 2023, and the defendant filed his motion "for Return of Property" on June 15. A virtual hearing was held on August 18 before the same judge who had taken the defendant's guilty pleas and imposed his sentences. As explained in more detail below, the judge ordered forfeiture of most of the property seized in execution of the search

warrants, returned some of it to the defendant, and directed that some items be restored to a third party.

Discussion. 1. Applicability of G. L. c. 276, §§ 4 to 8. After the judge's order in this case, the Supreme Judicial Court decided James, holding that the procedures set forth in G. L. c. 276, §§ 4 to 8, must be followed in forfeiture proceedings held under G. L. c. 276, § 3. See James, 493 Mass. at 838. Sections 4 through 6 of c. 276, pertain to notice and scheduling of the forfeiture hearing. Section 7 provides for the disposition of property that is forfeited. Section 8 describes the process for appealing to the Superior Court from a decree of forfeiture entered in the District Court. See James, supra at 834. The applicable procedures of §§ 4 to 8 were not followed here, but, unlike in James, the defendant did not raise any procedural objection in the Superior Court. See James, supra at 838-839 (where defendant raised issue of procedural deficiencies in renewed motion for return of property, and Superior Court judge reached merits of defendant's claim, issue not waived). The defendant argues that we should forgive his failure to preserve the issue under the clairvoyance exception to the waiver doctrine.

a. Clairvoyance exception. To assess the applicability of the clairvoyance exception, we begin by noting that the James decision turned on "questions of statutory interpretation."

James, 493 Mass. at 834.[1]  The result was dictated by the plain language of G. L. c. 276, § 3, and §§ 4 to 8, considered in light of the statute's history.  See James, supra at 833-838. The clairvoyance exception, however, "applies to errors of a constitutional dimension 'when the constitutional theory on which the defendant has relied was not sufficiently developed at the time of trial or direct appeal to afford the defendant a genuine opportunity to raise his claim at those junctures of the case.'"  Commonwealth v. Randolph, 438 Mass. 290, 295 (2002), quoting Commonwealth v. Rembiszewski, 391 Mass. 123, 126 (1984).

Because the James decision did not turn on questions of constitutional dimension, the clairvoyance exception does not apply.  In any event, the interpretation of the statute that the court adopted in James was not so novel that defense counsel would have to have been clairvoyant to think of it.  See Commonwealth v. Ashford, 486 Mass. 450, 453 (2020) ("the interpretation we give the statute usually reflects the court's view of its meaning since the statute's enactment" [citation omitted]).  Nor was the argument that G. L. c. 276, §§ 4 to 8,

---

[1] Because James involved issues of statutory construction, the Supreme Judicial Court could have made its decision applicable only to future cases.  See Commonwealth v. Ashford, 486 Mass. 450, 453-454 (2020); Commonwealth v. Bastos, 103 Mass. App. Ct. 376, 380-381 (2023).  For the purposes of this appeal, we assume that the court intended for the James decision to have full retroactive effect, which is the general rule in such cases.

applied foreclosed by established precedent such that the defendant did not have a genuine opportunity to raise the claim. See, e.g., Commonwealth v. Vasquez, 456 Mass. 350, 356-359 (2010) (waiver excused where prior binding decision made it futile to raise claim). The only case even hinting at a different interpretation of the statute, Beldotti v. Commonwealth, 41 Mass. App. Ct. 185, 189 (1996), cert. denied, 520 U.S. 1173 (1997), "gave no consideration whether the procedural requirements in §§ 4 to 8 had been followed, and it [was] unclear whether either party raised the issue on appeal." James, 493 Mass. at 838.[2] Because the clairvoyance exception is inapplicable, we do not "review the claim as if it had been properly preserved." Randolph, 438 Mass. at 295. Rather, we assume, without deciding, that the claim is reviewable under the substantial risk of a miscarriage of justice standard. See id. at 294-295.

b. Review for substantial risk of a miscarriage of justice. Although the notice of forfeiture proceedings did not comply with the notice procedures set forth in G. L. c. 276, §§ 4 to 6, the defendant and other interested parties had effective, actual notice. The Commonwealth filed its motion for

---

[2] In James, the court stated that "to the extent that Beldotti may be read as allowing forfeiture to be accomplished outside the parameters of §§ 4 to 8, it is not correct and not to be followed." James, 493 Mass. at 838.

forfeiture in April 2023; the defendant filed his motion for return of property, supported by a comprehensive memorandum, on June 15; and a hearing was held two months later.  Counsel for the defendant appeared and argued the motions.  A person claiming ownership of some of the seized firearms was permitted to be heard (and in fact was successful in reclaiming that property).  While the defendant's mother did not receive formal notice, she listened to the hearing and submitted an affidavit a few days later describing the family history of certain items that the defendant possessed and wanted returned.

The purpose of "notice and a trial" under §§ 4 to 8 is "so a judge may evaluate, on a full factual record, the merits of the competing arguments to determine if a forfeiture decree is in the 'public interest' under § 3."  James, 493 Mass. at 840, quoting G. L. c. 276, § 3.  In James itself the court noted, "Indeed, this case hinges on numerous factual disputes and thus requires a fact finder to resolve them."  James, supra.  Here, the defendant does not point to any unresolved factual disputes and does not state what additional evidence, if any, he would have provided, or how anything would have been different had there been strict compliance with §§ 4 to 8.  The arguments that the defendant makes on appeal are essentially the same arguments he made in his motion and at the motion hearing.

The Commonwealth, by contrast, points to record materials that it might have introduced in an evidentiary hearing on whether forfeiture was in the public interest. In anticipation of trial, the Commonwealth filed a motion in limine to allow admission of selected statements the defendant had made in telephone calls that were recorded while he was held pretrial at the house of correction. In those calls, the defendant made racist and antisemitic remarks, said that the "next time" he would throw a rock at his neighbors instead of banana peels, and expressed his intent to get a gun "within a day of being out of here." We are confident that strict adherence to §§ 4 to 8 would not have had a favorable, material influence on the result; therefore, we discern no substantial risk of a miscarriage of justice. See Commonwealth v. Alphas, 430 Mass. 8, 13 (1999).

Finally, we note that the defendant's brief makes two passing references to entitlement to a jury trial on the forfeiture issue, without argument or citation to legal authority. Nothing in James suggests the right to a jury trial. To the contrary, the decision refers to "a judge" evaluating the evidence and making the public interest determination. James, 493 Mass. at 840. At oral argument, the defendant suggested that entitlement to a jury trial might derive from G. L. c. 276, § 8, which states that appeals from District Court decrees of

forfeiture in the Superior Court "shall conform so far as may be to proceedings in criminal cases." As the issue was not adequately raised at any time, we decline to address it further. See Commonwealth v. Richardson, 479 Mass. 344, 357 n.17 (2018) (appellate court need not consider claims first raised at oral argument); Commonwealth v. Gray, 423 Mass. 293, 296-297 (1996) (claims "not supported by reasoned argument or citations" do not rise to level of appellate argument and need not be considered); Mass. R. A. P. 16 (a) (9) (A), as appearing in 481 Mass. 1628 (2019) (issues presented in brief must be supported with citations to authorities, and court need not address issues not argued in brief).

2. <u>Items not described in the warrant</u>. The warrants issued in this case authorized searches of the defendant's house for evidence of criminal harassment and for evidence of unlawful possession of firearms, specifically, "firearms, ammunition, and any documents evidencing the purchase, sale, custody or control of those items." In executing the second warrant, the police seized some items that were not described in the warrant, but that they recognized as related to the crimes they were investigating. These items were lawfully seized under the plain view doctrine, and the defendant does not contend otherwise. "Under [the plain view] doctrine, if police are lawfully in a position from which they view an object, if its incriminating

character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant." Commonwealth v. Santana, 420 Mass. 205, 211 (1995), quoting Minnesota v. Dickerson, 508 U.S. 366, 375 (1993). See, e.g., Commonwealth v. Sliech-Brodeur, 457 Mass. 300, 306-307 (2010) (police executing search warrant may seize items in plain view not covered by warrant "where the particular evidence is plausibly related to criminal activity of which the police are already aware"); Commonwealth v. D'Amour, 428 Mass. 725, 731 (1999) (in addition to contraband and fruits and instrumentalities of crime, police may seize mere evidence "if the officers recognize it as plausibly related to criminal activity of which they already were aware").

The defendant argues, as he did in the Superior Court, that § 3 does not authorize forfeiture of items unless they were described in the search warrant.[3] We disagree. The first sentence of § 3 speaks to when "an officer in the execution of a search warrant finds property or articles therein described" and authorizes the seizure and safekeeping of such items for use at

---

[3] The firearms and ammunition that the defendant unlawfully possessed were forfeited and delivered to the State police for destruction under G. L. c. 276, § 3 (b) as well as G. L. c. 269, § 10 (e). See James, 493 Mass. at 834 n.10 (§§ 4 to 8 do not apply to items forfeited under "dangerous weapons" exception of § 3 [b]). The judge allowed the return of some of the defendant's personal items, money, credit cards, forms of identification, and documents not relating to firearms.

trial.  The second sentence of § 3 provides that, with the exception of stolen goods, which are to be returned to their owners, "all other property seized in execution of a search warrant shall be disposed of as the court or justice orders and may be forfeited and either sold or destroyed, as the public interest requires, in the discretion of the court or justice" (emphasis added).  Giving effect to the plain and ordinary meaning of the words of the statute, see Ciani v. MacGrath, 481 Mass. 174, 178 (2019), we have little difficulty concluding that the forfeiture provision of § 3 encompasses not just items described in the search warrant, but also any item legally seized during the execution of the warrant.  For examples of standard English usage of words "execution of a search warrant," see, e.g., Commonwealth v. LaPlante, 416 Mass. 433, 440 (1993), S.C., 482 Mass. 399 (2019) (items not included in search warrant but identified "during the execution of the warrant" validly seized under plain view doctrine); Commonwealth v. Pierre, 71 Mass. App. Ct. 58, 66 (2008) (plain view doctrine applies to property discovered "during the execution of the valid search warrant"); E.B. Cypher, Criminal Practice and Procedure § 5:113 (4th ed. 2014) (police may seize items in plain view, even though not mentioned in warrant, if revealed in "the execution of" search warrant).  Indeed, the court in Commonwealth v. Rufo, 429 Mass. 380 (1999), noted the distinction between the

reference to property described in the warrant in the first sentence of § 3 and property subject to disposal under the second sentence. See id. at 382, quoting G. L. c. 276, § 3 ("Property seized pursuant to a search warrant in Massachusetts is held 'under the direction of the court' and all property [other than stolen property] 'seized in execution of a search warrant shall be disposed of as the court of justice orders'" [emphasis added]).

The defendant misplaces reliance on a parenthetical phrase from Commonwealth v. Salmons, 96 Mass. App. Ct. 61, 66 (2019), quoting Rufo, 429 Mass. at 384 ("there is no basis for extending the reach of G. L. c. 276, § 3, beyond its terms to [cover] property not seized pursuant to a warrant"). In Salmons, supra at 69, we held that an order permitting destruction of data from the defendant's cell phones was not authorized under § 3 because the seizure "was without a warrant and unlawful, and thus the public interest standard of G. L. c. 276, § 3, does not directly apply." The Rufo case concerned the forfeiture of $38,692 in United States currency seized by a Commonwealth police officer from the defendant's closed briefcase during a warrantless inventory search conducted after a traffic stop, later held to be unlawful. See Rufo, supra at 381. The court held only that in those circumstances, § 3 did not confer in rem jurisdiction over the currency sufficient to take precedence over a later

Federal forfeiture proceeding. See Rufo, supra at 382-384. Indeed, the sentence from Rufo quoted in Salmons begins by stating, "Obviously, there must be a process for returning to its owner property unlawfully seized without a warrant," and concludes, "but there is no basis for extending the reach of G. L. c. 276, § 3, beyond its terms to justify an assertion of in rem jurisdiction over property not seized pursuant to a warrant" (emphasis added). Rufo, supra at 384. The Salmons decision substituted "[cover]" for the words emphasized above. Salmons, supra at 66. In short, items in plain view that are lawfully seized during the execution of a search warrant are subject to forfeiture in the public interest under § 3. Nothing in Rufo or Salmons suggests otherwise.

3. Judge's exercise of discretion. The defendant contends that the judge erred in ordering forfeiture and destruction of three categories of items not particularized in the search warrant: firearms-related accessories, "such as gun cases, gun socks, tools, gun cleaning kits, holsters, scopes, hunting tag holders and ammo pouches" and "ammunition reloading equipment"; antique and replica firearms, including "black powder antique rifles," "antique handguns," and "antique/replica muzzle loading guns"; and items related to the criminal harassment and civil rights crimes, specifically "Confederate flags and pins" and "World War II Nazi souvenir helmets and artifacts."

General Laws c. 276, § 3, specifically gives the "court or justice" discretion to forfeit and either sell or destroy property lawfully seized in the execution of a search warrant "as the public interest requires." Accordingly, we review the judge's decision for an abuse of that discretion. See Commonwealth v. Dragotta, 96 Mass. App. Ct. 154, 156 (2019) (order denying motion for return of property reviewed for abuse of discretion).

The case law concerning the § 3 public interest standard is not well developed. In Beldotti, 41 Mass. App. Ct. at 185-186, 189, the defendant, who had been convicted of murder in the first degree in connection with a brutal, gruesome sex crime, sought the return of sexually explicit materials that had been seized from his home pursuant to a search warrant. We suggested that forfeiture of property with a connection to the defendant's crime would be in the public interest. See id. at 189. Because the items he sought to have returned could "be seen as being directly related to those acts, as having influenced his behavior, or as being relevant to an understanding of the psychological or physical circumstances under which the crime was committed," id., we concluded that "to return the property would be so offensive to basic concepts of decency treasured in a civilized society, that it would undermine the confidence that the public has a right to expect in the criminal justice

system." Id. at 190. On the other hand, in James, 493 Mass. at 840, the court stated that "property may not be forfeited based merely on the speculative concern that harm could occur if the disputed property were to be returned."

Here, the judge determined that all of the items in the three contested categories were "related to the crimes the police were investigating . . . i.e., civil rights and harassment offenses and numerous offenses involving the possession of dangerous weapons" and that the public interest therefore required their destruction. With respect to firearm and ammunition tools and accessories that "were not inherently contraband or illegal for [the defendant] to have possessed," the judge determined that forfeiture was in the public interest where the defendant pleaded guilty to "over 100 firearms and firearms-related offenses."

Given the defendant's criminal history and the convictions that followed the execution of the two search warrants, we discern no abuse of discretion in the judge's decision to order forfeiture of firearms-related items, tools, and equipment for making ammunition, and antique and replica firearms. These items all bear a strong connection to the defendant's convictions for firearms offenses, and there is a strong likelihood that the defendant might use such items for illegal purposes in the future, creating a grave risk to public safety.

In reviewing for abuse of discretion, we ask whether "the judge made a clear error of judgment in weighing the factors relevant to the decision, such that the decision falls outside the range of reasonable alternatives" (quotation and citation omitted). L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014). Although the defendant suggests that the judge could have fashioned a less "draconian" remedy, such as imposing probation conditions or selling these items to a third party, the judge's decision to limit the defendant's access to such items by authorizing their forfeiture and destruction was not outside the range of reasonable alternatives.

The forfeiture of the defendant's Nazi and Confederate souvenirs and paraphernalia presents a closer question. "[P]roperty may not be forfeited simply because it is offensive or repugnant." Beldotti, 41 Mass. App. Ct. at 189. In addition, the connection between these items and the defendant's hate crime is more attenuated than the connection between his firearms-related items and his firearms-related offenses. As the defendant points out, he did not display Confederate or Nazi items when he criminally harassed his Black neighbors.[4]

---

[4] He also argues, far less persuasively, that "Nazi War helmets may be construed possibly to relate to anti-semitism, but the banana throwing was not related to anti-semitism." See, e.g., Commonwealth v. Babbitt, 430 Mass. 700, 704 (2000) (defendant's "racist statements" included "Heil Hitler" and "white supremacy rules").

But there is a connection.  The items illuminate the defendant's state of mind, motivations, and actions underlying his criminal convictions, see Beldotti, 41 Mass. App. Ct. at 189, and they were seized because their incriminating character was immediately apparent to the officers executing the search warrants.  See Santana, 420 Mass. at 211.  The judge found that the public interest required the destruction of these items because they were "related to" the "civil rights and harassment offenses" the police were investigating, and to which the defendant pleaded guilty.  Our review is limited to determining whether the judge considered the relevant factors and arrived at a decision within the range of reasonable alternatives.  The judge did not order forfeiture of these items because they were offensive, and we discern no clear error in the judge's conclusion that these items were related to the defendant's civil rights and harassment offenses.  The judge's decision that the public interest requires forfeiture and destruction of these materials is not so unreasonable as to rise to the level of an abuse of discretion.

Conclusion.  So much of the judge's order entered October 15, 2023, allowing the Commonwealth's motion to dispose of certain seized property and denying the defendant's motion for return of the same property, is affirmed.

So ordered.