Concord District Court
No. 2005-261

THE STATE OF NEW HAMPSHIRE

v.

MICHAEL COHEN

Argued: May 17, 2006
Opinion Issued: August 22, 2006

90

*Kelly A. Ayotte*, attorney general (*Stephen D. Fuller*, senior assistant attorney general, on the brief and orally), for the State.

*John G. Vanacore*, of Concord, by brief and orally, for the defendant.

BRODERICK, C.J. The defendant, Michael Cohen, appeals an order from the Concord District Court (*Cullen*, J.) denying his motion for return of property. We affirm.

The record supports the following. Cohen owns a record store in Concord. In 2002, the State executed a search warrant at the store and seized several hundred compact discs belonging to Cohen, which he had been offering for sale.

Cohen was charged with seven misdemeanor counts of transferring, with intent to sell, copies of recordings made without the express written consent of their owners or performers. *See* RSA 352-A:2 (Supp. 2005). Cohen was never convicted of any of the charges, as some were dismissed and the State chose not to prosecute others. It appears that the State was unable to prove that Cohen knew or should have known that the tapes were created without the permission of the owners or performers.

Cohen then moved to have the compact discs returned to him. The State objected, arguing that the compact discs were contraband. During the hearing, Cohen's attorney stated, "In fact, we concede if the CDs ended up back up in his store, he was selling those CDs again, it would be an entirely new offense." Cohen makes similar concessions on appeal. The trial court denied Cohen's motion, stating, "The items in question were being offered for sale when they were seized. It would be illegal to sell these items knowing that they are counterfeit." The defendant then filed a motion to reconsider, to which the State objected. That motion was denied, and this appeal followed.

The legislature has established procedures governing the protection and return of property seized for possible use at trial. RSA 595-A:6 (2001). These rules state, in relevant part:

> Upon application by a prosecutor, defendant, or civil claimants, the court ... shall, upon notice to a defendant and hearing, and except for good cause shown, order returned to the rightful owners any ... property of evidential value, not constituting

> contraband. . . . All other property seized in execution of a search warrant or otherwise coming into the hands of the police shall be returned to the owner of the property, or shall be disposed of as the court or justice orders, which may include forfeiture and either sale or destruction as the public interest requires, in the discretion of the court or justice, and in accordance with due process of law.

*Id.* On appeal, Cohen argues that the compact discs are not contraband, and additionally that there is no public interest that would require their forfeiture.

We review a trial court's ruling on the disposition of property under RSA 595-A:6 for an unsustainable exercise of discretion. *State v. Gero,* 152 N.H. 379, 381 (2005). To show that the trial court's decision is not sustainable, a party must demonstrate that the court's ruling was clearly untenable or unreasonable to the prejudice of his case. *Id.*

Cohen concedes that an innocent party may lose his property under forfeiture statutes. *See Bennis v. Michigan,* 516 U.S. 442, 453 (1996) (upholding forfeiture of wife's car when used by husband to solicit prostitute); *Dobbins's Distillery v. United States,* 96 U.S. 395, 402 (1877) (upholding forfeiture of lessor's property when used for illegal purposes by lessee); *The Palmyra,* 25 U.S. 1, 14 (1827) (upholding forfeiture of ship by owner where he did not know it was used for privateering). This concept is, in part, rooted in the notion that "[t]he thing is here primarily considered as the offender," even if its owner is not. *The Palmyra,* 25 U.S. at 14. Cohen argues, however, that his case is distinguishable from others because "no crime was committed by anybody with regard to the one CD for which he was tried, [but] was not found guilty."

We agree that nothing in RSA 352-A:2, II(b) prohibits the possession of compact discs produced without the permission of the owners or performers. However, we disagree with Cohen's conclusion that such a determination is dispositive as to whether these discs are contraband and should be returned to him. That the possession of such compact discs is not illegal under this *particular* statute does not mean that the discs themselves do not constitute contraband pursuant to *other* statutes. Indeed, we conclude that they may constitute such contraband, or, in the alternative, that they may be derivative contraband.

Contraband materials are those which are "prohibited or excluded by law or treaty: forbidden." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 494 (unabridged ed. 2002). Contraband may also be defined as "[g]oods that are unlawful to . . . possess." BLACK'S LAW DICTIONARY 341 (8th ed. 2004). Black's Law Dictionary further elaborates on this

definition: contraband *per se* is "[p]roperty whose possession is unlawful regardless of how it is used"; derivative contraband is "[p]roperty whose possession becomes unlawful when it is used in committing an illegal act." *Id.* Cohen proposes an alternative definition, that contraband is generally "any property which is unlawful to produce or possess." We need not adopt any one of these definitions for purposes of RSA 595-A:6, however, as any of them may be applicable given the facts of a particular case.

We begin by examining whether the compact discs at issue could be considered contraband *per se*. RSA 352-A:2, II(b) is not the only statute that governs the illegal production and distribution of compact discs. To the contrary, the legislature has made it a misdemeanor to produce or publish, without permission of the author, any uncopyrighted literary, dramatic or musical composition, as well as many other works. RSA 352:1, :2 (1995). Similarly, Congress has made it a felony to willfully infringe copyrights either of works having a value of more than $1,000, or for purposes of commercial advantage or private financial gain. 17 U.S.C. § 506(a) (2000); 18 U.S.C. § 2319 (2000 & Supp. III 2003). As the creation of compact discs in violation of copyright laws is illegal under both State and federal statutes, we conclude that such discs are *per se* contraband, and thus contraband for the purposes of RSA 595-A:6.

However, even if we assume that illegally produced compact discs are not contraband *per se*, they nonetheless constitute derivative contraband. Derivative contraband "includes tools or instrumentalities that a wrongdoer has used in the commission of a crime." *Bennis v. Michigan*, 516 U.S. at 460. The production of compact discs in violation of copyrights, and without the permission of the work's author or owner for uncopyrighted works, is a criminal offense. 17 U.S.C. § 506(a); 18 U.S.C. § 2319; RSA 352:1, :2. Accordingly, even if Cohen himself did not produce these compact discs, whoever did so likely committed several hundred State misdemeanors, or various federal felonies. *See* RSA 352:1, :2; 17 U.S.C. § 506(a); 18 U.S.C. § 2319. Thus, Cohen's argument that "no crime was committed by anybody" is incorrect, assuming that the compact discs at issue were in fact created or transferred in violation of these State or federal laws. The discs themselves may be the instrumentalities of the commission of a crime—the means by which another's protected work was illegally copied—and, accordingly, may be derivative contraband.

Furthermore, *unlawful* possession does not necessarily mean *criminal* possession. The legislature, having chosen not to criminalize the possession of such compact discs under RSA 352-A:2, has not necessarily sanctioned possession of the same. Allowing the continued possession of

items that can be neither produced nor distributed thwarts Congress' and the legislature's express intent in protecting authors' rights in copyrighted and uncopyrighted works. *See* U.S.C. tit. 17 (2000 & Supp. III 2003) (entitled "Copyrights"); RSA 352:1, :2; RSA 352-A:2, II(b) (1995 & Supp. 2005). Regardless of whether possession of compact discs created in violation of these laws has been criminalized, we hold that such compact discs nonetheless constitute "contraband" under RSA 595-A:6, and are thus subject to a court's disposal in cases such as this.

Congress has also given copyright holders the ability to procure civil injunctions to protect their interests by granting them the exclusive rights of reproduction, adaptation, publication, performance, and display, irrespective of criminal sanctions for copyright infringement. 17 U.S.C. §§ 106 (exclusive rights to copyrighted works), 502-505 (civil remedies for copyright infringement) (2000). Presumably, State statutes provide similar protections. The State's extensive and longstanding laws protecting authors' and artists' works indicate a strong public policy against the production, distribution, and possession of such items by anyone. RSA 352:1, :2 (enacted in 1895).

■ We recognize that the trial court made its decision on the grounds that the compact discs "were being offered for sale when they were seized," and thus seems to have based its order on RSA chapter 352-A rather than other State or federal statutes. Accordingly, although we reach our conclusion, in part, on different grounds than did the trial court, we nonetheless conclude that illegally produced compact discs may be disposed of by a court in accordance with RSA 595-A:6, regardless of the guilt or innocence of the discs' owner.

We do not decide whether a trial court is *required* to order these discs disposed of, even in the case of a conviction. *Contra* 17 U.S.C. § 506(b) ("the court in its judgment of conviction *shall*, in addition to the penalty therein prescribed, order the forfeiture and destruction or other disposition of all infringing copies or phonorecords and all implements, devices, or equipment used in the manufacture of such infringing copies or phonorecords" (emphasis added)). However, we cannot say that, given these considerations, the trial court here necessarily unsustainably exercised its discretion in applying RSA 595-A:6. *See Gero*, 152 N.H. at 381.

Because we determine that illegally produced compact discs may be disposed of as contraband, we need not determine whether the public interest requires the same result. *Cf. id.* at 386; RSA 595-A:6.

The only remaining issue, then, is whether Cohen's compact discs were in fact produced in violation of State or federal law. Cohen conceded below,

and does again on appeal, that the compact discs were counterfeit. The trial court also made a specific finding to this effect. We read these concessions and the trial court's finding as a determination that the compact discs violated either State or federal statutes regarding copyrights. Accordingly, the compact discs are contraband, and the trial court was within its discretion to deny Cohen's motion for return of property.

*Affirmed.*

DUGGAN and HICKS, JJ., concurred; DALIANIS, J., with whom GALWAY, J., joined, dissented:

DALIANIS, J., dissenting. The majority concedes that nothing in RSA 352-A:2, II(b) (Supp. 2005) prohibits the possession of compact discs produced without the permission of the owners or performers. It further notes that "contraband *per se*" is defined by Black's Law Dictionary as "[p]roperty whose possession is unlawful regardless of how it is used." BLACK'S LAW DICTIONARY 341 (8th ed. 2004). The majority then cites State and Federal statutes prohibiting the production, publication, or sale of copyright-infringing materials to reach the conclusion that compact discs created in violation of copyright laws are *per se* contraband. However, the majority does not explain how statutes prohibiting the production, publication, or sale of certain works render *possession* of such works unlawful. Thus, I disagree with the majority's conclusion that the compact discs at issue may constitute *per se* contraband.

I further disagree that the compact discs at issue in this case, on the record before us, constitute derivative contraband. The State has failed to show that the defendant, or a third party, committed any crime or illegal act, or that the seized property was used in the commission of any such act. Instead, the State merely posits that the compact discs "were created and apparently sold or distributed to the defendant by a third party," and that such manufacture and sale "would have" constituted a violation of RSA 352-A:2. The majority credits the State's position by noting that the party or parties responsible for producing the compact discs "likely committed several hundred State misdemeanors, or various federal felonies." While the majority's conclusion may have merit, on the record here it is nothing more than conjecture, and we cannot suppose criminality where there is none proven.

The majority concludes that the compact discs are, "in fact," contraband. It bases its conclusion upon the defendant's concession that resale of the compact discs would constitute a "new offense," and a statement by the trial court noting that sale of the discs "would be illegal . . . knowing that

they are counterfeit." The statements of the defendant and the trial court are predicated upon the *assumption* that the compact discs are counterfeit, and do not, in my view, sufficiently compensate for the State's failure to establish in any way that the seized property constitutes contraband. Thus, I respectfully dissent.

GALWAY, J., joins in the dissent.