Grafton
No. 2005-375

THE STATE OF NEW HAMPSHIRE

v.

JANET MACELMAN

Argued: July 20, 2006
Opinion Issued: November 1, 2006

*Kelly A. Ayotte,* attorney general (*Susan P. McGinnis,* assistant attorney general, on the brief and orally), for the State.

*DesMeules, Olmstead & Ostler,* of Norwich, Vermont (*George H. Ostler* and *Christopher A. Dall* on the brief, and *Mr. Ostler* orally), for the defendant.

DUGGAN, J. This is an interlocutory appeal from an order of the Superior Court (*Houran,* J.) denying two motions to dismiss the indictment against the defendant, Janet MacElman. *See* SUP. CT. R. 8. We affirm and remand.

We take the facts as presented in the interlocutory transfer statement. *Cross v. Brown,* 148 N.H. 485, 485 (2002). On May 21, 2004, the defendant was indicted on one count of maintaining a common nuisance in violation of RSA 318-B:16 (2004), which provides:

> Any store, shop, warehouse, dwellinghouse, building, vehicle, boat, aircraft, or any place whatever which is resorted to by drug-dependent persons for the purpose of using controlled drugs or which is used for the illegal keeping or selling of the same shall be deemed a common nuisance. No person shall knowingly keep or maintain such a common nuisance.

The defendant filed two motions to dismiss. In the first, based upon both the State and Federal Constitutions, she argued that RSA 318-B:16 is overbroad and vague both on its face and as applied. In the second, based upon the State Constitution, she argued that the indictment failed to state an offense under New Hampshire law. The trial court denied both motions.

The issues before us on appeal present questions of constitutional law, which we review *de novo. State v. McLellan,* 149 N.H. 237, 240 (2003). We first address the defendant's claims under the State Constitution, *State v. Ball,* 124 N.H. 226, 231 (1983), and cite federal opinions for guidance only. *Id.* at 232-33.

*I. Vagueness*

The defendant argues that RSA 318-B:16 is vague both on its face and as applied. Where a defendant's vagueness claim does not involve a fundamental right, a facial attack on the challenged statutory scheme is unwarranted. *State v. Glidden,* 122 N.H. 41, 46 (1982); *see also Maynard v. Cartwright,* 486 U.S. 356, 361 (1988) ("Vagueness challenges to statutes not threatening First Amendment interests are examined in light of the facts of the case at hand; the statute is judged on an as-applied basis."). The defendant argues that the statute "interferes with several protected freedoms recognized by State and Federal law, including the freedom of association, sanctity of the home, and privacy of health care." We will assume, without deciding, that the defendant has articulated a fundamental or First Amendment right and review her facial challenge to the statute. We will then consider her as-applied challenge.

A statute can be impermissibly vague for either of two independent reasons: (1) it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits; or (2) it authorizes or even encourages arbitrary and discriminatory enforcement. *State v. Gatchell,* 150 N.H. 642, 643 (2004). A party challenging a statute as void for vagueness bears a heavy burden of proof in view of the strong presumption favoring a statute's constitutionality. *Id.* at 643; *see also State v. Smagula,* 117 N.H. 663, 666 (1977) ("It is a basic principle of statutory construction that a legislative enactment will be construed to avoid conflict with constitutional rights wherever reasonably possible."). In addition, "[m]athematical exactness is not required in a penal statute, nor is a law invalid merely because it could have been drafted with greater precision." *State v. Porelle,* 149 N.H. 420, 423 (2003) (quotation omitted).

The defendant argues that the phrase "drug-dependent person" is vague both because it fails to provide a person of ordinary intelligence a reasonable opportunity to understand the conduct proscribed and because it allows for arbitrary enforcement. We address each argument in turn.

We conclude that RSA 318-B:16 provides a person of ordinary intelligence a reasonable opportunity to understand the conduct it prohibits. The plain language of the statute and our scienter case law support this conclusion. The statute's plain language, read in conjunction

with RSA 318-B:1, X (2004), gives clear notice to a person of ordinary intelligence of the precise conduct, involving drug-dependent persons, that would constitute the nuisance. *See Porelle*, 149 N.H. at 423 (stating that "[t]he necessary specificity need not be contained in the statute itself, but rather, the statute in question may be read in the context of related statutes, prior decisions, or generally accepted usage" (citation omitted)). RSA 318-B:1, X defines a "drug-dependent" person as:

> any person who has developed a state of psychic or physical dependence, or both, upon a controlled drug following administration of that drug upon a repeated periodic or continuous basis. No person shall be classified as drug dependent who is dependent: (a) Upon a morphine-type drug as an incident to current medical treatment of a demonstrable physical disorder other than drug dependence, or (b) Upon amphetamine-type, ataractic, barbiturate-type, hallucinogenic or other stimulant and depressant drugs as an incident to current medical treatment of a demonstrable physical or psychological disorder, or both, other than drug dependence.

RSA 318-B:1, X.

This definition of "drug-dependent person" does not involve any level of unacceptable guesswork. Among other things, it: (1) delineates the type of dependence that would render an individual "drug-dependent" (psychic or physical); (2) discusses the nature of the drug's administration to the dependent person (repeated periodic or continuous); and (3) enumerates particular classes of medication, the use of which would not render a person "drug-dependent." RSA 318-B:1, X. Furthermore, RSA 318-B:16's requirement that drug-dependent persons must resort to the particular location *for the purpose of* using controlled drugs does not leave any doubt, for a person of ordinary intelligence, as to whether the lawful and prescribed consumption of medication in one's home or other location is prohibited by the statute. Clearly, it is not.

 Moreover, for each of its material elements, the statute requires a scienter of "knowingly." *See State v. Morabito*, 153 N.H. 302, 305 (2006). We have previously held that a scienter requirement in a statute ameliorates the concern that the statute does not provide adequate notice to citizens regarding the conduct that is proscribed. *Porelle*, 149 N.H. at 423; *see also Hill v. Colorado*, 530 U.S. 703, 732 (2000). Applied to each material element of the offense, the "knowingly" scienter requirement diminishes the risk of an individual being prosecuted for conduct that she could not understand. Accordingly, because the statute uses plain and

easily understandable words, and since our reading of this statute indicates that it is sufficiently clear, we hold it is not unconstitutionally vague on its face.

■ We now turn to the defendant's as-applied challenge and determine whether the statute provided her with a reasonable opportunity to know that her particular conduct was proscribed by the statute. *See Porelle*, 149 N.H. at 424. RSA 318-B:16 prohibited the defendant from knowingly keeping or maintaining a place to which persons psychically or physically dependent upon controlled drugs resorted *for the purpose of* using those controlled drugs. Here, the indictment charged the defendant with maintaining a premises to which drug-dependent persons resorted to use heroin. Keeping or maintaining a premises to which heroin-dependent users resort for the purpose of using that drug is clearly within the realm of conduct proscribed by the statute. Moreover, the record contains evidence that two males had died at the premises, the first from acute intoxication by the combined effects of alcohol and opiates and the second from a heroin overdose. Especially in light of the statute's requirement that the defendant keep or maintain such a place "knowingly," the likelihood that the defendant would be penalized for misunderstanding the words or application of the statute is remote. Accordingly, we hold that RSA 318-B:16 gave the defendant adequate warning of what actions were proscribed and we reject her argument that RSA 318-B:16 is void for vagueness as applied to her.

■ We now turn to the defendant's contention that the statute, as written, is impermissibly vague because it authorizes or encourages discriminatory enforcement. *See Gatchell*, 150 N.H. at 643. The defendant posits that officers enforcing RSA 318-B:16 may have differing opinions as to who is a "drug-dependent person" because the definition of that term is not clear. For the reasons stated above, we do not find the term "drug-dependent person" to be unclear such that it would engender arbitrary or discriminatory enforcement. However, even assuming *arguendo* that there were some lack of clarity in the term "drug-dependent person," it does not raise the specter of arbitrary or discriminatory enforcement. We have previously determined that "[a]lthough the legislature must establish minimal guidelines to govern law enforcement, enforcement requires the exercise of some degree of police judgment." *Porelle*, 149 N.H. at 424 (quotation and citation omitted). In light of the three limitations on the definition of drug-dependent person noted above, we conclude that RSA 318-B:16 provides such minimal guidelines and that the degree of judgment required by RSA 318-B:16, to the extent it exists, is acceptable, both on its face and as applied in the defendant's circumstances.

Having evaluated and rejected the defendant's vagueness challenges under the State Constitution, we conclude that the Federal Constitution offers the defendant no greater protection than does the State Constitution under these circumstances. *Id.* at 423; *Hill*, 530 U.S. at 732. Accordingly, we reach the same result under the Federal Constitution as we do under the State Constitution.

*II. Overbreadth*

■■■■ "A statute is void for overbreadth if it attempts to control conduct by means which invade areas of protected freedom." *State v. Pike*, 128 N.H. 447, 450-51 (1986) (quotation and citations omitted). "[T]he overbreadth doctrine permits the facial invalidation of laws that inhibit the exercise of First Amendment rights if the impermissible applications of the law are substantial when judged in relation to the statute's plainly legitimate sweep." *Chicago v. Morales*, 527 U.S. 41, 52 (1999) (quotation omitted). The criterion of "substantial overbreadth" precludes a court from invalidating a statute on its face simply because of the possibility, however slight, that it might be applied in some unconstitutional manner. *State v. Brobst*, 151 N.H. 420, 422 (2004). Further, the substantial overbreadth doctrine applies to constitutional challenges of statutes that prohibit conduct, as well as challenges to those statutes prohibiting "pure speech" and "conduct plus speech." *Id.* The purpose of the overbreadth doctrine is to protect those persons who, although their speech or conduct is constitutionally protected, may well refrain from exercising their rights for fear of criminal sanctions by a statute susceptible of application to protected expression. *Id.* The application of the overbreadth doctrine is strong medicine to be employed only as a last resort. *Id.* Mindful that "[l]egislative enactments are construed to avoid conflict with constitutional rights, and provisions may be cured through judicial construction," *State v. Smith*, 127 N.H. 433, 439 (1985) (citation omitted), we turn to the defendant's arguments.

First, the defendant argues that RSA 318-B:16 interferes with associational rights and that "[f]reedom of [a]ssociation is a protected liberty under both the State and Federal Constitutions." "Overbreadth attacks have ... been allowed where the Court thought rights of association were ensnared in statutes which, by their broad sweep, might result in burdening innocent associations." *Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973) (citations omitted). However, an appellant must fulfill two preconditions before triggering a state constitutional analysis: first, the appellant must raise the state constitutional issue in the trial court; second, the appellant's brief must specifically invoke a provision of the State Constitution. *DeBenedetto v. CLD Consulting Eng'rs*, 153 N.H. 793,

806 (2006). Here, the defendant cites only the First Amendment to the United States Constitution in support of her position. She does not cite any provisions of the New Hampshire Constitution. We will not, therefore, undertake a state constitutional analysis of the defendant's associational freedom argument.

In terms of the Federal Constitution, RSA 318-B:16 does not prohibit a substantial amount of protected associational activities in the constitutional sense. *See, e.g., People ex. rel. Gallo v. Acuna*, 929 P.2d 596, 608-09 (Cal. 1997) (summarizing United States Supreme Court cases involving First Amendment associational rights). In fact, RSA 318-B:16 does not punish anyone for, or prevent anyone from, associating with anyone else in contravention of the rights the United States Supreme Court has articulated under the First Amendment to the Federal Constitution. *See id.* Rather, RSA 318-B:16 proscribes particular conduct—keeping or maintaining one of the enumerated locations as a place to which drug-dependent persons, as defined by RSA 318-B:1, X, resort for the purpose of using controlled drugs.

 Despite the defendant's broad assertions, she has not demonstrated on the record in this case how RSA 318-B:16, as we have construed it, prohibits a substantial amount of protected First Amendment conduct outside of its legitimate application. That is, she has pointed to no substantial protected conduct from which a citizen would refrain out of concern over application of RSA 318-B:16.

> That is not surprising, since the overbreadth doctrine's concern with "chilling" protected speech attenuates as the otherwise unprotected behavior that it forbids the State to sanction moves from pure speech toward conduct. Rarely, if ever, will an overbreadth challenge succeed against a law or regulation that is not specifically addressed to speech or to conduct necessarily associated with speech (such as picketing and demonstrating).

*Virginia v. Hicks*, 539 U.S. 113, 124 (2003) (quotation omitted). RSA 318-B:16 is not addressed specifically to speech or to conduct necessarily associated with speech. Accordingly, we reject the defendant's facial challenge to RSA 318-B:16 and conclude that applications of RSA 318-B:16 that infringe upon protected conduct, to the extent such applications exist, may be remedied on a case-by-case basis. *See id.*

Beyond First Amendment associational interests, the defendant argues that RSA 318-B:16 is subject to a facial overbreadth challenge because: (1) its application to the circumstances in this case violated Part I, Article 19 of the State Constitution and the Fourth Amendment to the Federal

Constitution; and (2) it infringes upon health care privacy interests. However, as discussed below, the defendant has not satisfactorily explained how the operation or application of RSA 318-B:16 would affect a protected constitutional liberty, beyond First Amendment interests, so as to potentially support a facial overbreadth challenge. *See Morales*, 527 U.S. at 53-55.

■■■ The State, in the valid exercise of its police power, generally may abate or prevent nuisances. *See* 58 AM. JUR. 2D *Nuisances* § 48 (2002). We recognize that the sanctity of the home is jealously guarded by a long line of cases. *State v. Johnston*, 150 N.H. 448, 455 (2004). However, operation of RSA 318-B:16 does not require a physical intrusion into the home and, therefore, does not automatically implicate the type of Part I, Article 19 search and seizure issue involved in *Johnston* or the type of Fourth Amendment issue involved in the case cited by the defendant, *Silverman v. United States*, 365 U.S. 505, 512 (1961) (involving insertion of "spike" microphone into building heating system in order to listen to conversations going on inside the building). It also bears noting that the defendant has not alleged a search or seizure of her home in the instant case, and neither the Fourth Amendment nor Part I, Article 19 authorizes knowingly keeping and maintaining a place to which heroin-dependent individuals resort to use heroin, among other drugs.

■■■ With respect to "health care privacy" laws or interests, the defendant contends RSA 318-B:16 "essentially requires homeowners to conduct an inquiry of all individuals who use any type of drug to determine whether they are drug dependent, whether or not they have a prescription and to otherwise inquire into traditionally private matters." We disagree. RSA 318-B:16 does not impose any such duty to inquire. Rather, through its heightened scienter requirement, RSA 318-B:16 imposes liability for *knowingly* keeping or maintaining a place used in the designated manner. Therefore, we reject the defendant's arguments.

*III. Sufficiency of the Indictment*

Finally, we turn to the defendant's argument that the indictment against her was insufficient under the State Constitution. The indictment charged that between June 9, 2001, and September 7, 2002, the defendant did "knowingly keep or maintain any dwellinghouse which is resorted to by drug dependent persons for the purpose of using controlled drugs in that Janet MacElman kept or maintained her home, which was resorted to by several drug dependent persons for the purpose of using controlled drugs, including heroin."

The defendant contends that the indictment is defective because: (1) it fails to allege that she committed a specific overt act, other than ownership of the home; and (2) it does not specify the drug-dependent persons involved. We address both arguments together.

 The test to determine the sufficiency of an indictment is whether it provides the defendant with enough information to adequately prepare her defense. *State v. French*, 146 N.H. 97, 103-04 (2001). Once a crime has been identified with factual specificity, there is no additional requirement that the acts by which the defendant may have committed the offense be identified. *State v. Burley*, 137 N.H. 286, 289 (1993). The question is not whether the indictment could have been more certain and comprehensive, but whether it contains the elements of the offense and enough facts to warn the defendant of the specific charges against her. *French*, 146 N.H. at 104.

Here, the language of the indictment tracked the language of the statute. We have held that "an indictment is sufficient if it uses the words of the proper section of the applicable statute. The test of its sufficiency remains always the same: whether it gives the defendant enough information so that [s]he can prepare for trial." *State v. Dennehy*, 127 N.H. 425, 431 (1985) (quotation omitted).

 The indictment in the instant case provided the defendant with several pieces of information. First, it put the defendant on notice that her keeping or maintaining a particular premises to which drug-dependent persons resorted—her home—led to the nuisance alleged by the State. Second, it specified a time period—June 9, 2001, to September 7, 2002— during which the alleged nuisance existed. Third, it identified a particular controlled drug—heroin—that was used by drug-dependent persons resorting to the premises. These facts mirror the elements of the nuisance offense. *See* RSA 318-B:16; RSA 318-B:22 (2004). We also note that the statute contains a definition of "drug-dependent person." *See* RSA 318-B:1, X. Inserting names of particular drug-dependent persons into the indictment is neither required by the statute nor necessary to the defendant's preparation for trial. "Based on this indictment, we do not see how the defendant can claim that [s]he would be unable to invoke double jeopardy protection or educate [her] counsel on whatever [s]he knows about the offense, so that investigation, discovery and other trial preparation can begin." *State v. Pelky*, 131 N.H. 715, 719 (1989) (quotation omitted). Thus, under these circumstances, we conclude that the

indictment against the defendant was not insufficient under the State Constitution.

*Affirmed and remanded.*

BRODERICK, C.J., and DALIANIS, GALWAY and HICKS, JJ., concurred.