Strafford
No. 2005-299

# THE STATE OF NEW HAMPSHIRE

v.

# SMOKE SIGNALS PIPE & TOBACCO SHOP, LLC

Argued: October 26, 2006
Opinion Issued: April 18, 2007

*Kelly A. Ayotte*, attorney general (*Nicholas Cort*, assistant attorney general, on the brief and orally), for the State.

*Sisti Law Offices*, of Chichester (*Jonathan Cohen* on the brief and orally), for the defendant.

DUGGAN, J. The defendant, Smoke Signals Pipe & Tobacco Shop, LLC (Smoke Signals), appeals an order of the Superior Court (*Mohl*, J.) denying its motion for return of property, following its acquittal of four class B misdemeanor charges of sale of drug paraphernalia. We reject Smoke Signals' argument that the definition of drug paraphernalia in RSA 318-B:1, X-a (Supp. 2006) is unconstitutionally vague, but conclude that, under the circumstances of this case, even though the items seized here come within the categories of items listed in RSA 318-B:1, X-a, the superior court erred in denying Smoke Signals' motion. Accordingly, we reverse.

*I. Factual Background*

In February 2002, the Strafford County Attorney's Office charged Smoke Signals with multiple misdemeanor-level offenses of selling drug paraphernalia contrary to RSA 318-B:2 (2004). On January 26, 2004, Smoke Signals entered a guilty plea to a single charge of selling drug paraphernalia, and was sentenced to a suspended fine. As part of the guilty plea, the State and Smoke Signals entered into an agreement regarding which items Smoke Signals was prohibited from selling. The agreement listed six items that Smoke Signals could not sell:

1. Tube construction water pipes and insert tubes and bowls designed for tube construction water pipes excluding hookahs and bubblers.
2. Dugouts with a ceramic cigarette or otherwise disguised as cigarettes.
3. Metal pipes or Ceramic Pipes with a bowl less than ½ inch in diameter or non-traditional metal pipes or kits and or component parts which are commonly utilized to construct such pipe.
4. Small wooden pipes without stems.
5. Concealed pipes such as plastic highlighter pens.
6. Klear Detoxifier formula and other detoxification products.

The State returned to Smoke Signals many of the items that had been originally seized. The superior court found that the items returned included "a number of small glass pipes, so-called carburetor pipes, several so-called bubblers, small glass pipes that contain a water chamber filter,

and a number of smaller items referred to as 'one hitters' that are used for smoking material . . . ."

A few months later, police conducted a search of Smoke Signals and seized several items purported to be drug paraphernalia. Thereafter, Smoke Signals was charged by information with four class B misdemeanor counts of sale of drug paraphernalia. The informations alleged that Smoke Signals knowingly offered for retail sale drug paraphernalia, including: (1) "a quantity of water pipes," (2) "a quantity of carburetor pipes," (3) "a metal pipe" and (4) "a quantity of chillums."

Following a bench trial held on January 12 and 13, 2005, Smoke Signals was acquitted on all four charges. In its findings and rulings, the superior court explained that its decision was based, in part, upon the outcome of the earlier prosecution.

> The court finds from the evidence that several of the items seized in this case, and as to which Smoke Signals is charged, namely, certain glass water pipes, glass so-called carburetor pipes and a metal pipe, are the identical items returned to Smoke Signals on January 26, 2004, following the first prosecution. Further, many of the items seized in this case, and for which Smoke Signals is charged, are similar to and virtually indistinguishable from many of the items returned to Smoke Signals after the first prosecution.

After recognizing the "unusually broad" definition of drug paraphernalia in RSA 318-B:1, X-a, the superior court stated:

> It is apparent from the prior prosecution, the Agreement referred to above, and the record of the proceedings in that case, that the parties attempted to narrow the broad statutory definition, to allow [Smoke Signals] to sell at least items that were returned to [Smoke Signals] that were not specifically proscribed in the Agreement. No other conclusion can be reached except that [Smoke Signals] would have understood that it was free to offer for sale the items returned and items similar to those items.

Although the court noted that there was "strong evidence" that a number of the items forming the basis of the present charges could be considered drug paraphernalia under the broad statutory definition, it acknowledged that it was necessary for the State to prove "not only that the items are drug paraphernalia as defined by the statute, and that they were offered for sale, but also that Smoke Signals acted knowingly in the sale of drug paraphernalia." The court stated:

Here, where the State returned some of the very items on which it bases its prosecution, and where in many instances, the items seized are similar to the items returned to Smoke Signals in the prior prosecution, the court cannot find the State has proven beyond a reasonable doubt that the defendant acted knowingly in the sale of drug paraphernalia with respect to the items in evidence in this case.

Smoke Signals then filed a motion asking the superior court to order the State to return the glass pipes and other items seized by the police. The superior court denied the motion. In its order, the court explained that neither the fact that Smoke Signals was acquitted of all charges of selling drug paraphernalia nor the plea agreement in the earlier prosecution had any "conclusory effect on [its] determination of whether the items seized . . . are, in fact, drug paraphernalia." The court found that based upon the evidence presented during the bench trial, "the items seized . . . are drug paraphernalia and, therefore, contraband." It is this order that Smoke Signals appeals.

## II. Discussion

On appeal, Smoke Signals argues that the superior court erred: (1) by failing to find RSA 318-B:1, X-a unconstitutionally vague; (2) by finding that the items it sought to have returned were drug paraphernalia based upon the evidence presented at the bench trial; (3) by recognizing Detective Kyle True as an expert witness during the trial; and (4) by refusing to return the property.

Recently, in *State v. Cohen*, 154 N.H. 89 (2006), we upheld a trial court's denial of the defendant's motion for return of property. We observed that the property was subject to the procedures governing the protection and return of property seized for possible use at trial set forth in RSA 595-A:6 (2001), and proceeded to determine whether the property was contraband subject to forfeiture. *See Cohen*, 154 N.H. at 90-93.

In this case, during the proceedings in superior court, neither the parties nor the court addressed whether the property should be returned pursuant to RSA 595-A:6, and the *Cohen* decision was issued well after the superior court rendered its decision on the motion to return property. On appeal, neither party addressed RSA 595-A:6 or *Cohen* in its brief. Therefore, we ordered the parties to submit supplemental memoranda addressing the following issues:

(1) Whether, the case should be remanded to the superior court for reconsideration and further findings in light of our decision in *Cohen*; and

(2) Whether, if the court decides not to remand the case and to decide the case on the existing record, the property is contraband under RSA 595-A:6 and *Cohen*.

In their supplemental memoranda, both parties agree that this case should not be remanded to the superior court for further consideration. However, they part company in their assessment of the effects of *Cohen*. Smoke Signals asserts that the property is not contraband under RSA 595-A:6 because the only statute implicated is RSA 318-B:1, X-a, which it argues is unconstitutionally vague. In its memorandum, the State suggests that this issue is not preserved for appellate review because "the question whether items meeting a constitutional definition of 'drug paraphernalia' are contraband was never raised below."

Even though the parties and the superior court utilized a different analysis from that set forth in RSA 595-A:6 and *Cohen*, the question of whether or not the property at issue is contraband was the subject of both a hearing and a court order. Thus, the issue is preserved for appellate review. Moreover, after giving the parties ample opportunity to persuade us whether we should remand this case to the superior court for reconsideration in light of our decision in *Cohen*, the State took the position that the case should not be remanded because the existing record is sufficient to address the issue of whether the property is contraband under RSA 595-A:6 and *Cohen*. Accordingly, we conclude that the issue is now sufficiently developed for appellate review.

We now proceed to address the main issues in this case. First, we will address Smoke Signals' argument regarding the constitutionality of RSA 318-B:1, X-a. Next, we will determine whether or not the property is contraband pursuant to RSA 595-A:6 and *Cohen*.

### A. Constitutionality of RSA 318-B:1, X-a

Smoke Signals argues that RSA 318-B:1, X-a is unconstitutionally vague under both the State and Federal Constitutions because the section of the statute defining drug paraphernalia as objects "customarily intended for use" in ingesting a controlled substance does not put an ordinary person on notice of what objects are drug paraphernalia and fails to give law enforcement and the judiciary the proper guidance to guard against arbitrary and inconsistent enforcement of the law.

In rebuttal, the State emphasizes that this court previously ruled that an earlier version of the same statute is constitutional. *See Opinion of the Justices*, 121 N.H. 542 (1981). The State argues that the phrase "customarily intended for use" is straightforward, and that similar phrases have been upheld against vagueness challenges in other contexts. Further,

the State asserts that the statute poses no danger of arbitrary enforcement, because the statutory scheme includes comprehensive guidelines to govern law enforcement officials. *See* RSA 318-B:2, IV (2004).

First, we note that where a defendant's vagueness claim does not involve a fundamental right, a facial attack on the challenged statutory scheme is unwarranted. *State v. MacElman*, 154 N.H. 304, 307 (2006). Smoke Signals does not specify—in its brief or anywhere else—whether it is mounting a facial challenge to the statute or an "as applied" vagueness challenge. *See State v. Glidden*, 122 N.H. 41, 46 (1982) (where a facial attack is unwarranted, we examine the statutory scheme only as it applies to the facts of the particular case). However, in its brief Smoke Signals utilizes the analysis we have adopted for assessing a facial vagueness challenge. The State has raised no objection to this approach. In light of the State's failure to object that a fundamental right has been implicated in this case, we will assume, without deciding, that Smoke Signals has articulated a fundamental or First Amendment right and review its facial challenge to the statute. *See MacElman*, 154 N.H. at 307.

The issue before us on appeal presents a question of constitutional law, which we review *de novo*. *State v. Hall*, 154 N.H. 180, 182 (2006). We first address Smoke Signals' claim under the State Constitution, *State v. Ball*, 124 N.H. 226, 231 (1983), and cite federal opinions for guidance only. *Id.* at 232-33.

■■■ A statute can be impermissibly vague for either of two independent reasons: (1) it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits; or (2) it authorizes or even encourages arbitrary and discriminatory enforcement. *MacElman*, 154 N.H. at 307. A party challenging a statute as void for vagueness bears a heavy burden of proof in view of the strong presumption favoring a statute's constitutionality. *Id.* In addition, "[m]athematical exactness is not required in a penal statute, nor is a law invalid merely because it could have been drafted with greater precision." *Id.* (quotation omitted).

RSA 318-B:1, X-a defines "drug paraphernalia," and provides in pertinent part:

> "Drug paraphernalia" means all equipment, products and materials of any kind which are used or intended for use or customarily intended for use in ... ingesting, inhaling, or otherwise introducing into the human body a controlled substance in violation of this chapter. It includes, but is not limited to:

. . . .

(k) Objects used or intended for use or customarily intended for use in ingesting, inhaling, or otherwise introducing marijuana, cocaine, hashish, or hashish oil into the human body, such as:

    (1)  Metal, wooden, acrylic, glass, stone, plastic, or ceramic pipes with or without screens, permanent screens, hashish heads, or punctured metal bowls.

    (2)  Water pipes.

    (3)  Carburetion tubes and devices.

    (4)  Smoking and carburetion masks.

    (5)  Chamber pipes.

    (6)  Carburetor pipes.

    (7)  Electric pipes.

    (8)  Air-driven pipes.

    (9)  Chillums.

    (10) Bongs.

    (11) Ice pipes or chillers.

In *Opinion of the Justices*, 121 N.H. at 543-46, we considered the constitutionality of an earlier version of RSA 318-B:1, X-a. In that case, we held that the statute was not unconstitutionally vague because "the definition of 'paraphernalia' includes an element of specific intent, [and] puts the average person on notice that his conduct may be illegal." *Id.* at 545.

The present version of RSA 318-B:1, X-a is in all relevant respects the same as the version of the statute considered in *Opinion of the Justices*, except that the phrase "customarily intended for use" was added to the statute by the legislature in 1989. *See* Laws 1989, 361:1. Thus, we must determine if the phrase "customarily intended for use" renders the statute unconstitutionally vague. We conclude that it does not.

Like the version of the statute considered in *Opinion of the Justices*, the present version of RSA 318-B:1, X-a includes an element of specific intent. We have previously held that a scienter requirement ameliorates the concern that a statute does not provide adequate notice to citizens regarding the conduct that is proscribed. *MacElman*, 154 N.H. at 308. Applied to each material element of the offense, the "knowingly" scienter requirement diminishes the risk of an individual being prosecuted for conduct that he or she could not understand. *Id.*

■ Examining the phrase at issue in context, we observe that the current version of the statute provides ample notice of the objects it proscribes. Objects are considered "drug paraphernalia" if they are used, intended for use or customarily intended for use to, among other things,

introduce controlled substances into the human body. The use of the word "customarily" in the statute is comprehensible, and "presents an evidentiary question rather than a constitutional validity question." *State v. J.H.B.*, 415 So. 2d 814, 815 (Fla. Dist. Ct. App. 1982). In addition, RSA 318-B:1, X-a(a)-(k) contains a nonexhaustive list of items that may be considered drug paraphernalia. The list provides further guidance in understanding how the statute may be violated. Notably, the list includes water pipes, carburetor pipes, metal pipes, and chillums—all of which Smoke Signals was indicted for selling.

█ Smoke Signals also argues that RSA 318-B:1, X-a permits the intent of another to be transferred to the accused. We disagree and find that the terms "intended for use" and "customarily intended for use" do not permit a person "to be found criminally liable based on the intentions of another." *Opinion of the Justices*, 121 N.H. at 545. Rather, "[t]he person who must use an item, design it for use, or intend it for use with drugs in order for it to be drug paraphernalia, is the person charged with one of the [statute's] substantive violations." *Mid-Atlantic Accessories Trade Ass'n v. Maryland*, 500 F. Supp. 834, 844 (D. Md. 1980) (holding that the term "intended for use" in a similar statute applies to the accused). Accordingly, we conclude that RSA 318-B:1, X-a provides people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits, and thus is not impermissibly vague. *See MacElman*, 154 N.H. at 307-09.

█ For similar reasons, the statute does not authorize or encourage arbitrary and discriminatory enforcement, because the statutory scheme provides comprehensive guidelines to govern law enforcement. Specifically, RSA 318-B:2, IV provides:

> In determining whether an object is drug paraphernalia under this chapter, a court or other authority should consider, in addition to all other logically relevant factors, the following:
>
> (a) Statements by an owner or by anyone in control of the object concerning its use;
>
> (b) Prior convictions, if any, of an owner, or of anyone in control of the object, under any state or federal law relating to any controlled substance;
>
> (c) The proximity of the object, in time and space, to a direct violation of this chapter;
>
> (d) The proximity of any residue of controlled substances;
>
> (e) The existence of any residue of controlled substances on the object;

(f)  Direct or circumstantial evidence of the intent of an owner, or of anyone in control of the object, to deliver it to persons whom he knows intend to use the object to facilitate a violation of this chapter; the innocence of an. owner, or of anyone in control of the object, as to a direct violation of this chapter shall not prevent a finding that the object is intended for use as drug paraphernalia;

(g)  Instructions, oral or written, provided with the object concerning its use;

(h)  Descriptive materials accompanying the object which explain or depict its use;

(i)  National and local advertising concerning its use;

(j)  The manner in which the object is displayed for sale;

(k)  Direct or circumstantial evidence of the ratio of sales of the objects to the total sales of the business enterprise;

(l)  Whether the object is customarily intended for use as drug paraphernalia and the existence and scope of other legitimate uses for the object in the community; and

(m)  Expert testimony concerning its use.

We find that the statute—when viewed as a whole—provides sufficient guidance to protect against arbitrary or discriminatory enforcement, and thus withstands constitutional scrutiny.

Having evaluated and rejected Smoke Signals' vagueness challenge under the State Constitution, we conclude that the Federal Constitution offers it no greater protection than does the State Constitution under these circumstances. Therefore, we reach the same result under the Federal Constitution as we do under the State Constitution. *State v. Brown*, 154 N.H. 345, 350 (2006).

### B. Is the Property Contraband

Having found that RSA 318-B:1, X-a is constitutional, we now consider whether the property at issue is contraband under RSA 595-A:6 and *Cohen*. Smoke Signals contends that the items are not contraband because they have never been used by anyone to ingest a controlled substance or for any other illegal purpose, nor have they been used as a tool or instrumentality in the commission of a crime. The State argues that the items are contraband *per se* because all of the items are "dangerous to society in general or to law enforcement agents in particular." *See United States v. Baird*, 63 F.3d 1213, 1226 (3d Cir. 1995) (Sarokin, J., dissenting), *cert. denied*, 516 U.S. 1111 (1996). The State also alleges that the items

constitute derivative contraband because they were all manufactured by other parties and delivered to Smoke Signals in violation of both state and federal law. *See* RSA 318-B:2, II, II-a (2004); *see also* 21 U.S.C. § 863(a) (2000).

The property at issue is subject to the procedures governing the protection and return of property seized for possible use at trial set forth in RSA 595-A:6, which states that:

> Upon application by a prosecutor, defendant, or civil claimants, the court . . . shall, upon notice to a defendant and hearing, and except for good cause shown, order returned to the rightful owners any . . . property of evidential value, not constituting contraband. . . . All other property seized in execution of a search warrant or otherwise coming into the hands of the police shall be returned to the owner of the property, or shall be disposed of as the court or justice orders, which may include forfeiture and either sale or destruction as the public interest requires, in the discretion of the court or justice, and in accordance with due process of law.

In *Cohen*, we set forth a comprehensive test for determining whether or not property is contraband under the statute and thus subject to forfeiture. *Cohen*, 154 N.H. at 91-93. We explained that contraband materials may fall into one—or both—of two categories: contraband *per se* and derivative contraband. *Id.* at 91-92. Contraband *per se* is "[p]roperty whose possession is unlawful regardless of how it is used." *Id.* at 92 (quotation omitted). Derivative contraband is "[p]roperty whose possession becomes unlawful when it is used in committing an illegal act," and includes "tools or instrumentalities that a wrongdoer has used in the commission of a crime." *Id.* (quotations omitted).

In *Cohen*, the property at issue was several hundred compact discs, which the defendant had offered for sale at his record store. *Id.* at 90. Although the defendant was charged with several misdemeanor counts of transferring, with intent to sell, copies of recordings made without the express written consent of their owners or performers, *see* RSA 352-A:2 (Supp. 2006), he was never convicted of any of the charges. *Id.*

The defendant moved to have the compact discs returned to him, and the district court denied his motion. *Id.* We upheld the district court's ruling, finding that the discs were contraband *per se* because "the *creation* of compact discs in violation of copyright laws is illegal under both State and federal statutes." *Id.* at 92 (emphasis added). We also concluded that the discs were derivative contraband because even though the defendant himself did not produce the compact discs, "whoever did so likely

committed several hundred State misdemeanors, or various federal felonies." *Id.* Further, we observed that "[t]he discs themselves may be the instrumentalities of the commission of a crime—the means by which another's protected work was illegally copied—and, accordingly, may be derivative contraband." *Id.*

The State argues that based on the existing record we should conclude that "drug paraphernalia is contraband for the same reasons that the counterfeit compact discs in *Cohen* were contraband." As outlined above, the State contends that under both New Hampshire and federal law the sale and manufacture of drug paraphernalia is prohibited. *See* RSA 318-B:2, II, II-a (2004); *see also* 21 U.S.C. § 863(a) (2000). The State concedes that Smoke Signals did not manufacture the items allegedly constituting drug paraphernalia; however, it goes on to argue that "[i]t is . . . evident that all of the items were manufactured by other parties and delivered (and sold) to [Smoke Signals] . . . in violation of both state and federal law." Further, the State asserts that:

> [Smoke Signals'] claim that "the property at issue in this case has not been used as a tool or instrumentality of [*sic*] the commission of any crime by any wrongdoer," . . . is . . . incorrect.
>
> . . . Just as the status of the compact discs in *Cohen* did not depend on whether the defendant in that case had used them to commit a crime, . . . the drug paraphernalia here is contraband regardless of whether Smoke Signals itself used it in the commission of a crime.

We are not persuaded by the State's argument. In *Cohen*, from the moment the discs were created, they were contraband. The same is not true of the items seized in this case. This is clear from *Posters 'n' Things, Ltd. v. United States*, 511 U.S. 513 (1994), wherein the Supreme Court of the United States considered the scienter requirement under the federal drug paraphernalia statute for two categories of drug paraphernalia: items "designed for use" with controlled substances, and items "primarily intended . . . for use" with such substances. *See id.* at 518 (interpreting a previous version of the drug paraphernalia statute identical in all relevant respects to 21 U.S.C. § 863). The court said that some items, "including bongs, cocaine freebase kits, and certain kinds of pipes" have no other use than with controlled substances. *Id.* Thus, the court concluded that these items "constitute drug paraphernalia irrespective of the knowledge or intent of one who sells or transports them." *Id.* However, for items "primarily intended . . . for use" with controlled substances, the court held that the prosecution "must establish that the defendant knew that the items at issue are likely to be used with illegal drugs." *Id.* at 524.

None of the items seized in this case were alleged to be "designed for use" with controlled substances. The holding in *Posters 'n' Things* is thus inconsistent with the State's argument that these items became contraband under federal law from the time they were manufactured. They would only constitute drug paraphernalia under federal law if there was proof that Smoke Signals acted knowingly—a burden that the superior court judge found the State failed to meet at trial.

The State's argument is also inconsistent with the federal forfeiture statute. Under 21 U.S.C. § 863(c) (2000): "Any drug paraphernalia involved in any violation of subsection (a) of [21 U.S.C. § 863] shall be subject to seizure and forfeiture upon the conviction of a person for such violation." 21 U.S.C. § 863(c). Therefore, according to federal law, no forfeiture can occur until there is a conviction. Here, Smoke Signals was acquitted of all pending charges.

■ Finally, the State's argument that the items at issue are now—and apparently always have been—contraband, is inconsistent with its own conduct in this case. In January 2004, the State made clear to Smoke Signals that there were six specific categories of items that it could not sell. The State also returned to Smoke Signals certain glass pipes and other items. Presumably at that time, the State did not consider the items it returned to be contraband. Then, the State reversed course and prosecuted Smoke Signals for, as the superior court found, "items virtually indistinguishable from many of the items returned to Smoke Signals after the first prosecution." We thus reject the State's arguments and reverse the decision of the superior court.

*Reversed.*

BRODERICK, C.J., and DALIANIS, GALWAY and HICKS, JJ., concurred.